DA 09-0246

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 94

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KEVIN MARK TAYLOR,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 08-131
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Taryn S. Hart, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

          John Parker, Cascade County Attorney; Great Falls, Montana

Submitted on Briefs:  December 10, 2009

Decided:  May 4, 2010

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Kevin Mark Taylor appeals from the Judgment and Sentence of the Montana Eighth Judicial District Court. We affirm the District Court's Judgment and Sentence. We restate the following issues on appeal:

¶2 *I. Whether the fact that state law enforcement did not conduct a rape exam warrants reversal under the common law plain error doctrine.*

¶3 *II. Whether Taylor was denied effective assistance of counsel at trial when his attorney did not seek dismissal of Count I or seek a missing evidence jury instruction.*

¶4 *III. Whether the District Court erred in denying Taylor's motion for a mistrial.*

¶5 *IV. Whether the District Court erred in denying Taylor's motion to sever the three charges against him.*

## BACKGROUND

¶6 Defendant Kevin Mark Taylor (Taylor) worked under contract as a massage therapist for Peak Health and Wellness in Great Falls, Montana. On March 11, 2008, "Jane Doe," who had seen Taylor for a massage, contacted the Great Falls Police Department to report a sex offense in which she told law enforcement that Taylor had penetrated her vagina with his finger during the massage. Police Officer Keith Hedges (Hedges) took a statement from Doe and testified that he conferred with his supervisor regarding a rape exam for Doe. Hedges testified that it was ultimately his supervisor's decision not to request the rape exam and the decision was based in part on the conclusion that "we would not be finding bodily fluid such as semen inside of her." Doe testified that if Hedges had suggested she go to the hospital, she would have done so. At

2

trial the State did not produce any physical evidence of the crime. In closing arguments, Taylor's counsel argued that the lack of a rape exam created reasonable doubt as to Taylor's guilt. The State argued that there were valid law enforcement reasons for not conducting the exam.

¶7     The second charge, sexual assault, originated from an October 2007 professional massage Taylor gave to thirty-one-year-old "Janet Coe." After the massage, Coe called her sister, explaining that Taylor had given her a massage that "seemed like it was sexual," in which he had touched Coe on the inside of her thighs coming within an inch of her vagina. Coe did not tell her husband or call the police at the time because she wanted to just "get away" from what happened. She testified she did not want to go through the "torture" of pursuing prosecution. However, when Taylor's arrest was reported on the news, Coe told her husband to call the police.

¶8     Taylor was charged with three counts, including two counts of sexual intercourse without consent and a third count of misdemeanor sexual assault. Taylor pleaded not guilty to all counts. At trial, Taylor's counsel initially proposed a lesser-included offense jury instruction. The state objected, arguing that the instruction would not be appropriate since there was no evidence in the record to support the lesser-included offense of sexual assault. The District Court and defense counsel agreed to revisit the matter after trial, at which point Taylor's counsel withdrew the proposed instruction.

¶9     While Judge Neill instructed the jury, a group of roughly ten individuals dressed in black and blue uniforms entered and stood against the back wall of the courtroom on the prosecution side. Defense Counsel told the court that he heard from people in the

3

courtroom that the group included "the husband of one of the alleged victims and potentially the Great Falls Ambulance crew." After defense counsel brought the group to the court's attention, Judge Neill told them to be seated. The group then left the courtroom. When the jury was dismissed for deliberations, defense counsel made a motion for mistrial, arguing that the group's presence intimidated the jury thereby violating Taylor's fundamental right to a fair and impartial jury. The District Court denied Taylor's motion for a mistrial.

¶10 Taylor was convicted of one count of sexual intercourse without consent and one count of misdemeanor sexual assault. He was sentenced to the Montana State prison for thirty years, with five suspended, for the first count and to a consecutive sentence of six months at the Cascade County Detention Center for misdemeanor sexual assault. Taylor appeals.

**DISCUSSION**

¶11 *I. Whether the fact that state law enforcement did not conduct a rape exam warrants reversal under the common law plain error doctrine.*

¶12 This Court generally does not address issues raised for the first time on appeal. *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 290, 194 P.3d 694, 697. However, when a criminal defendant's fundamental rights are invoked, we may choose to review a claim under the common law plain error doctrine where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the

4

integrity of the judicial process. *State v. Jackson*, 2009 MT 427, ¶ 42, 354 Mont. 63, 77, 221 P.3d 1213, 1224.

¶13     While we have acknowledged the constraints on appellate review of trial court errors articulated in § 46-20-701(2), MCA, we have also held that this Court may use its inherent power and paramount obligation to interpret Montana's Constitution and protect the rights set forth in that document. *Id*. Therefore, we may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights even if the defendant did not timely object in the trial court, and notwithstanding constraints on appellate review set forth in § 46-20-701(2), MCA. *Id.*

¶14     In *State v. Finley*, we established the two-part test for whether common law plain error may be invoked:

> [W]e hold that this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

*State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996). Under this test, the Court asks two questions. First: does this alleged error implicate a fundamental right? Second: would failure to review the alleged error result in one of the above-listed consequences?

¶15     In recent decisions, we have observed that a "fundamental aspect of "plain error" is that the alleged error indeed must be "plain." *State v. Wagner*, 2009 MT 256, ¶ 21, 352 Mont. 1, 8, 215 P.3d 20, 25 (quoting *State v. Godfrey*, 2004 MT 197, ¶ 328, 322 Mont.

254, 266, 95 P.3d 166, 174). This statement has lent itself to misinterpretation, and we now find it useful to clarify how it fits into the common law plain error test established in *Finley*. The requirement that an error be "plain" is not a free-standing third requirement outside the two-part *Finley* test. It is, however, a means by which the Court may analyze whether the second *Finley* criterion has been satisfied.

¶16 For example, in *State v. Wagner*, 2009 MT 256, 352 Mont. 1, 215 P.3d 20, the defendant urged the Court to apply the common law plain error doctrine after the state prosecutor asked a series of questions creating an inference of guilt in the minds of jurors. We determined that the prosecutor was "overreaching" and that this "inference of guilt caused actual prejudice to Wagner." *Id.* at ¶ 20-21. We held that "the prosecutor's conduct raises questions regarding the fundamental fairness of the trial by violating Wagner's constitutional right to due process and privilege against self-incrimination." *Id.* at ¶ 21. We similarly invoked the "must be plain" language in *State v. Godfrey*, 322 Mont. at 266, 95 P.3d at 174. There, we held that the alleged error must leave the Court "firmly convinced" that a prosecutor's comments "created an inference for the jury that by remaining silent after receiving his rights, the defendant must be guilty of the alleged crimes." *Id.* at ¶ 38.

¶17 In short, the "error must be plain" language is not an independent third requirement of common plain error. Rather, it serves as a guide in determining whether the second prong of the *Finley* test has been satisfied. The alleged error must leave one "firmly convinced" that some aspect of the trial, if not addressed, would result in a manifest miscarriage of justice, call into question the fairness of the trial or proceeding,

6

or compromise the integrity of the judicial process. Here, Taylor requests that the Court overturn two of its precedents: that police officers have no duty to procure evidence on behalf of a defendant and that a defendant must show bad faith to prove a due process violation when lost evidence is only potentially exculpatory. *See Brown*, 1999 MT 133, ¶ 24, 294 Mont. 509, 982 P.2d 468; *State v. Giddings*, 2009 MT 61, ¶ 48, 349 Mont. 347, 357, 208 P.3d 363, 371. These arguments advocating revision of our jurisprudence on evidence-collecting were well-presented. However, in light of the specific facts of Taylor's case, we cannot say that this particular appeal leaves us "firmly convinced" that an aspect of the trial, if not corrected, would result in one of the second *Finley* consequences. As a result, we decline to apply the common law plain error doctrine.

¶18    *II. Whether Taylor was denied effective assistance of counsel at trial when his counsel did not seek dismissal of Count I or seek a missing evidence jury instruction.*

¶19    Taylor claims his counsel was ineffective because he did not file a motion to dismiss or to reduce the charges based on the lack of rape exam evidence. Taylor avers that his counsel should have requested a missing evidence jury instruction requiring the jury to infer that the missing evidence would have been exculpatory to Taylor. Taylor contends that his attorney's failure to seek such an instruction constituted ineffective assistance of counsel.

¶20    The Sixth Amendment of the U.S. Constitution and Article II, § 24, of the Montana Constitution guarantee the right to effective assistance of counsel. We have adopted the two-part ineffective assistance of counsel test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). We

7

have summarized the test as the following dual inquiry: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether a reasonable probability exists that but for counsel's errors, the result of the proceeding would have been different. *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 94, 183 P.3d 861, 864.

¶21 Before we apply the *Strickland* test, we first determine whether the claim is record-based or not. Claims such as Taylor's involving "omissions," are frequently ill-suited for direct appeal. *State v. Russell*, 2008 MT 417, ¶ 33, 347 Mont. 301, 308, 198 P.3d 271, 276 (citing *State v. Meyers*, 2007 MT 230, ¶ 10, 339 Mont. 160, 168 P.3d 645). Taylor claims that the lack of a rape exam was highly prejudicial and Taylor's counsel should have capitalized on this lack of evidence by seeking a reduced charge of misdemeanor sexual assault and, failing that, should have sought a missing evidence jury instruction.

¶22 Taylor's claimed errors are both based on alleged omissions of counsel. The record reveals limited discussion between counsel and the District Court judge at the initial stage of the trial regarding the proposed jury instructions, but the record provides no explanation regarding defense counsel's reasons for later withdrawing the proposed instructions. This issue is therefore best suited for review in a postconviction proceeding which will allow further inquiry as to why counsel chose to proceed as he did. We dismiss this issue without prejudice.

¶23 *III. Whether the District Court erred in denying Taylor's motion for a mistrial.*

8

¶24     Taylor argues that the presence of roughly ten individuals dressed in black and blue uniforms standing in the back of the courtroom on the prosecution side during the reading of jury instructions was an "intimidation tactic" and constitutes grounds for a mistrial. The District Court denied Taylor's motion for a mistrial. We review a district court's decision whether to grant or deny a motion for a mistrial for an abuse of discretion. *State v. Wing*, 2008 MT 218, ¶ 25, 344 Mont. 243, 251, 188 P.3d 999, 1006. A district court's denial of a motion for a mistrial is entitled to deference on appeal. *State v. Novak*, 2005 MT 294, ¶ 25, 329 Mont. 309, 124 P.3d 182, 188.

¶25     We find nothing indicating that the court abused its discretion. Once Judge Neill was made aware of the group's presence in the courtroom, he ordered them to be seated. The group then left and the court proceeded with closing arguments. Judge Neill acted within his discretion when he declined to grant a mistrial based on this single, brief incident.

¶26     *IV. Whether the District Court erred in denying Taylor's motion to sever the three charges against him.*

¶27     Taylor next argues that the District Court erred in denying his motion to sever the three offenses with which he was charged. Pursuant to § 46-13-211(1) (2007), MCA, a trial court may order separate trials if the defendant can demonstrate he would be prejudiced by a joinder of charges for trial. The trial court must balance possible prejudice to a defendant against the judicial economy resulting from holding a joint trial. *State v. Freshment*, 2002 MT 61, ¶ 25, 309 Mont. 154, 164, 43 P.3d 968, 976. A defendant seeking to sever counts into separate trials has the burden of proving that

9

severing the counts is necessary to prevent unfair prejudice. *Id.* There are three types of prejudice a defendant can argue that, if found to exist, would prevent a fair trial:

> 1) The accumulation of evidence may be such that a jury would find the defendant a bad person and wish to convict the defendant of something;
>
> 2) A jury might use evidence of guilt on one count to convict on another count, even though that evidence would be inadmissible at a separate trial on the latter count;
>
> 3) The defendant may suffer prejudice by wanting to testify on one count and not another.

*Id.* at ¶ 27. Taylor argues that to allow joinder when the sole evidence is uncorroborated victim testimony is prejudicial because the chance the jury will improperly accumulate evidence is exponentially increased. Taylor avers that joinder allows one alleged victim to bolster the credibility of another alleged victim even though proof of one incident is not proof of another. He contends that joinder could sway the outcome and asks that we reverse and remand, requiring a separate trial on each count.

¶28 We have held that "an unsupported, general assertion of the cumulative effect of evidence alone is not sufficient to demonstrate prejudice requiring severance." *State v. Duncan*, 2008 MT 148, ¶ 29, 343 Mont. 220, 227, 183 P.3d 111, 117. Further, the cumulative effect of multiple charges is rarely a sufficient reason to justify severance. *State v. Baker*, 237 Mont. 140, 145, 773 P.2d 1194, 1197 (1989). Under the above standards, Taylor's vague speculations regarding the impact of accumulated evidence are not sufficient to demonstrate prejudice requiring severance. We therefore hold that the District Court did not err in denying the motion to severe.

10

¶29    Lastly, because the District Court did not err in its decisions regarding the above issues, we need not consider Taylor's final argument advocating application of the cumulative error doctrine.

¶30    We affirm the District Court's Judgment and Sentence, and dismiss Taylor's ineffective assistance of counsel claim without prejudice.


/S/ W. WILLIAM LEAPHART


We concur:


/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS



Justice James C. Nelson, concurring.

¶31    I concur in the Court's decision.

¶32    As to Issue I, the Court explains that to invoke the common law doctrine of plain error review, two requirements must be met.  In summary, the appellant must show, first, that the claimed error implicates a fundamental right and, second, that the error is "plain." To show that the error is "plain," the appellant must "firmly convince" this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or

11

compromise the integrity of the judicial process. Opinion, ¶¶ 14-17; *see also State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996). Applying this test to the specific facts of this case, the Court concludes, without further comment, that we are not "firmly convinced" that an aspect of Taylor's trial, if left unaddressed or uncorrected, would result in one of the *Finley* consequences listed above. Hence, we decline to apply the plain error doctrine. Opinion, ¶ 17.

¶33 I agree with this approach. We have previously explained that to obtain plain error review, the appellant must make a threshold showing that his or her claim meets any of the three criteria set out in *Finley*. *See State v. West*, 2008 MT 338, ¶ 23, 346 Mont. 244, 194 P.3d 683. Necessarily, once the appellant has addressed that threshold showing, he or she will then proceed to argue the merits of the claim. The claim may have merit, or it may not. But that is not the initial question this Court must decide. Rather, the initial question we must decide is whether we are "firmly convinced" that failing to address the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. Opinion, ¶ 17.

¶34 Implicit in our statement that we apply the doctrine of plain error review "sparingly," *Finley*, 276 Mont. at 138, 915 P.2d at 215, is the reality that many claims which have merit (had they been properly preserved for appellate review) will not satisfy the high standard set by the three *Finley* criteria. And it follows from this that our refusal to apply the plain error doctrine is not based on our determination that the claim has no merit. Rather, it is based on our conclusion that we are not "firmly convinced" the claim

meets one of the *Finley* criteria. For this reason, I believe it is inappropriate for this Court to express any view directed (implicitly or explicitly) toward the merits of a claimed error unless we have first decided to apply the plain error doctrine. If we are not "firmly convinced" that failing to review the claimed error will result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process, then that is all we need to say.

¶35    Granted, we must "review" the appellant's arguments to determine whether he or she has made the requisite showing under *Finley*. But there are a variety of reasons why we may conclude that this showing has not been made. Perhaps the parties' briefing is inadequate or the claim has not been coherently presented; perhaps the constitutional theory itself has merit, but the facts do not support application of the right in the given case; perhaps it appears that the defendant suffered no prejudice from the claimed error; perhaps the claim, as presented, appears to be without merit; or perhaps we are declining review for some other reason. No detailed explanation is required, however—especially since our exercise of plain error review is a purely discretionary matter, *Finley*, 276 Mont. at 137, 915 P.2d at 215, and since the claimed error was not properly preserved for appellate review in the first place. When we embark on a detailed explanation of why we are declining to apply the plain error doctrine, we may give the false impression that we have decided the merits of the claim, or we may issue what amounts to an unconstitutional advisory opinion on an issue that we ultimately are refusing to actually address and decide on the merits.

13

¶36 As noted, the Court in the present case explains that Taylor (who failed to properly preserve for our review the claimed error regarding the rape exam) has not demonstrated any of the three *Finley* criteria. The Court therefore declines, without further elaboration, to apply the doctrine of plain error review. Opinion, ¶ 17. Again, I agree with this approach.

¶37 I concur.

/S/ JAMES C. NELSON