DA 16-0382

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 311

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

LEE COCHRAN AKERS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                    In and For the County of Park, Cause No. DC 16-10
                    Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Chief Appellate Defender, James Reavis, Assistant Appellate
              Defender, Helena, Montana

       For Appellee:

              Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
              Attorney General, Helena, Montana

              Bruce E. Becker, Park County Attorney, Kathleen Carrick, Deputy County
              Attorney, Livingston, Montana

                               Submitted on Briefs:  October 25, 2017
                                       Decided:  December 19, 2017

Filed:

                                        Clerk

FILED

12/19/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0382

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Lee Cochran Akers (Akers) appeals from an order of the Sixth Judicial District Court, Park County, on appeal from the Park County Justice Court (Justice Court). The District Court's order denied Akers's motion to dismiss, affirmed the Justice Court's judgment, and remanded the case to the Justice Court to enforce its judgment. We reverse and remand for further proceedings consistent with this Opinion.

¶2 Akers presents three issues on appeal. First, Akers argues the Justice Court erred by not instructing the jury that the State carried the burden of proving Akers's actions were not a justifiable use of force. Second, Akers argues his trial counsel was ineffective for failing to request such an instruction. Third, Akers argues he was denied the right of confrontation when the State presented its witnesses through Skype testimony. We conclude that the Justice Court erred by not instructing the jury that the State carried the burden of proving Akers's actions were not a justifiable use of force and reverse. Accordingly, it is unnecessary to address Akers's ineffective assistance of counsel claim. Further, because these proceedings are being remanded, we decline to issue an advisory opinion addressing the propriety of the State's use of Skype testimony. We restate the dispositive issue as follows:

> *Whether this Court should exercise plain error review to reverse Akers's conviction because the jury was not instructed on the burden of proof for justifiable use of force.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Akers travelled from Tennessee to Montana with four friends, Terri Gilley (Gilley), Myron Tipton (Tipton), Terri McFarland, and Scott Marcha, to attend a music concert.

2

While in Montana, the group also visited Yellowstone National Park and stayed in a cabin in Park County. Gilley and Akers had several arguments during the trip and on September 1, 2015, a physical altercation ensued. As a result, Gilley left the cabin and contacted local police. Park County Sheriff's Deputy Pete Adams (Adams) met with Gilley and observed a scratch on her cheek and several bruises on both of her arms. Adams subsequently arrested Akers and cited him with misdemeanor assault.

¶4 The facts surrounding the physical altercation are disputed. According to Gilley, in response to something Akers said, Gilley threw a cup containing ice and soda at Akers's head. After throwing the cup at Akers, Gilley attempted to run away, but Akers grabbed Gilley, shoved her, and hit her several times. Akers presents a different version of the incident. Akers maintains that, without provocation, Gilley threw the cup and contents at his head and then approached him. Akers then grabbed Gilley's wrists to prevent her from scratching or hitting him. Holding onto her wrists, Akers attempted to back Gilley out of the cabin's front door, but Gilley fell to the floor and she, again, tried to scratch him from her position on the floor. Akers believes it was at this point that Gilley scratched herself in the face.

¶5 Prior to trial, the State filed a motion to allow testimony of witnesses at trial through Skype, a software application and video conferencing platform, which allows for real-time audio and video telecommunication. The State cited the burden of travel as its cause for filing the motion. On December 22, 2015, the Justice Court granted the State's motion in a single-sentence order.

¶6     The Justice Court held a jury trial on January 29, 2016. At trial, Akers relied on the defense of justifiable use of force. Akers presented witnesses who testified to a version of the incident largely consistent with his own. The State presented witnesses who testified to a version of the incident largely consistent with Gilley's. Gilley testified through Skype from Tennessee. The State presented an additional rebuttal witness, Sheldon Ziro, who also testified through Skype from Tennessee. Akers's witnesses all testified personally in court. The jury convicted Akers of assault and the Justice Court sentenced him to pay a fine of $300, court costs of $85, and jury costs of $806.52. The Justice Court stayed enforcement of its judgment pending Akers's appeal to the District Court.

¶7     On appeal, Akers filed a motion to dismiss and raised two arguments. First, Akers argued Article VII, Section 4, of the Montana Constitution, entitled him to a trial de novo in the District Court because the Justice Court judge was not an attorney. Second, Akers argued the confrontation clause of the Sixth Amendment to the United States Constitution; Article II, Section 24, of the Montana Constitution; M. R. Evid. 611(e); and § 46-16-201, MCA, entitled him to confront the witnesses against him in person, not through Skype. The District Court denied Akers's motion to dismiss, affirmed the Justice Court's judgment, and remanded the case to the Justice Court to enforce its judgment.

¶8     Akers appeals.

## STANDARDS OF REVIEW

¶9     When district courts function as intermediate appellate courts for appeals from lower courts of record, this Court reviews the appeal de novo as though it were originally

filed in this Court. Section 3-5-303, MCA; *Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461 (citation omitted).

¶10 Generally, an appellate court does not address issues raised for the first time on appeal. *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126. Plain error review is an exception to this general rule where we may consider issues raised for the first time on appeal. *Favel*, ¶ 13; *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled on other grounds by*, *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. "[C]ourts invoke plain error review to correct error not objected to at trial but that affects the fairness, integrity, and public reputation of judicial proceedings." *Finley*, 276 Mont. at 134, 915 P.2d at 213. To reverse a decision for plain error, the appellant must: (1) demonstrate that the claimed error implicates a fundamental right; and (2) firmly convince this Court that a failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. *Favel*, ¶ 23 (quotations omitted) (citing *State v. Daniels*, 2011 MT 278, ¶ 32, 362 Mont. 426, 265 P.3d 623).

## DISCUSSION

¶11 As a preliminary matter, Akers satisfied his burden of producing evidence sufficient to place his affirmative defense of justifiable use of force at issue. *See Daniels*, ¶ 15. Akers gave notice to the State of his intention to raise justifiable use of force in advance of trial. Akers and Tipton testified that Gilley struck Akers in the head with a cup and that Gilley moved forward to scratch at Akers with her nails. Akers then sought to defend himself by restraining Gilley to prevent Gilley from scratching him. Akers, accordingly, offered

5

evidence of his affirmative defense of justifiable use of force and properly placed the defense at issue.

¶12     Section 46-16-131, MCA, provides that "when the defendant has offered evidence of justifiable use of force, the state has the burden of proving beyond a reasonable doubt that the defendant's actions were not justified."  "Courts may not disregard the plain language of a statute." *State v. Cooksey*, 2012 MT 226, ¶ 32, 366 Mont. 346, 286 P.3d 1174 (citation omitted).  However, neither Akers nor the State requested or submitted a proposed jury instruction, which properly instructed the jury on the burden of proof pursuant to § 46-16-131, MCA; nor did the Justice Court sua sponte instruct the jury on the State's burden.  The only issues Akers presented to the District Court on appeal were that a non-lawyer judge presided over the Justice Court trial and that his constitutional right of confrontation was violated by the State's presentation of Skype testimony.  Generally, "a reviewing court can consider only those issues that are properly preserved for its review." *In re Transfer Territory from Poplar Elementary Sch. Dist. No. 9 to Froid Elementary Sch. Dist. No. 65*, 2015 MT 278, ¶ 13, 381 Mont. 145, 364 P.3d 1222 (citing *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38.  "In order to preserve a claim or objection for appeal, an appellant must first raise that specific claim or objection in the [lower court]." *In re T.E.*, ¶ 20.  "The basis for the general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100 (quotations and citation omitted).  The parties agree that the failure to

properly instruct the jury on the burden of proof for justifiable use of force was not raised in the Justice Court or District Court and, therefore, was not preserved.

¶13 Despite Akers's failure to preserve this issue at the Justice Court and failure to raise the issue at the District Court, this Court may, as Akers recommends, exercise plain error review. "[T]he plain error doctrine is to be employed sparingly, on a case-by-case basis" considering the "totality of circumstances of each case." *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252 (quotations and citation omitted). When a "criminal defendant's fundamental rights are invoked, we may choose to review a claim under the common law plain error doctrine where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79 (citation omitted). For this Court to reverse under plain error, Akers must first demonstrate that the claimed error implicates a fundamental right. *Favel*, ¶ 23. Akers argues his "fundamental right to be protected from conviction except upon presentation of proof beyond a reasonable doubt of every fact that Montana requires to constitute a crime, including the absence of justification" was implicated by the Justice Court's failure to instruct the jury on the State's burden of proof.

¶14 The interests of a criminal defendant "are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 1808 (1979) (footnote omitted).

"This is accomplished by requiring under the Due Process Clause that the state prove the guilt of an accused beyond a reasonable doubt." *Addington*, 441 U.S. at 423-24, 99 S. Ct. at 1808 (citing *In re Winship*, 397 U.S. 358, 370, 90 S. Ct. 1068, 1076 (1970) (Harlan, J., concurring)). The formula "beyond a reasonable doubt" is accepted in common law jurisdictions "as the measure of persuasion by which the prosecution must convince the trier of all essential elements of guilt," and its universal acceptance reflects "a profound judgment about the way in which law should be enforced and justice administered." *In re Winship*, 397 U.S. at 361-62, 90 S. Ct. at 1071 (quotations and citations omitted); *In re J.S.*, 2017 MT 214, ¶ 23, 388 Mont. 397, 401 P.3d 197.

¶15 Consonant with these principles, Montana requires that the "jury is to be instructed by the court on all proper occasions . . . [and] that in criminal cases guilt must be established beyond a reasonable doubt." Section 26-1-403, MCA. We have explained, in the context of the affirmative defense of justifiable use of force, that the State carries the burden of proving beyond a reasonable doubt that the defendant's actions were not justified, *in addition* to proving each element of the crime of assault beyond a reasonable doubt. *State v. Erickson*, 2014 MT 304, ¶ 25, 377 Mont. 84, 338 P.3d 598 ("In 2009, . . . the Legislature enacted legislation [§ 46-16-131, MCA] designed to shift the burden to the State to prove the absence of justification in self-defense claims." (citation omitted)). "[W]hile the district court's discretion is broad, it is ultimately restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law." *State v. Archambault*, 2007 MT 26, ¶ 25, 336 Mont. 6, 152 P.3d 698 (citation omitted).

¶16    In light of the foregoing principles, we conclude that failure to instruct the jury of the State's burden of proof implicated Akers's fundamental right to a fair trial. *Addington*, 441 U.S. at 423-24, 99 S. Ct. at 1808; *In re J.S.*, ¶ 23. At trial, Akers argued that his actions constituted self-defense, not assault. Section 46-16-131, MCA, places the burden on the State of proving Akers's actions towards Gilley were not justified. The State had the burden of proving beyond a reasonable doubt that Akers's actions were not justified, in addition to proving each element of the crime with which Akers was charged. We therefore agree with Akers that the jury made its determination without being fully and fairly instructed of the applicable law, which was an error that implicated his fundamental rights.

¶17    Having determined Akers has satisfied the first element to establish plain error, we turn to the second. This Court will review and reverse a decision for plain error if we are convinced that a failure to do so will result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. *Favel*, ¶ 23. While Akers's claimed error potentially implicates each of the listed criteria, we are convinced that, at a minimum, allowing his conviction to stand will leave unsettled the question of the fundamental fairness of the proceeding. The failure to properly instruct on the State's burden of proof implicates whether the State met its burden of proof in establishing Akers's guilt. As we have recognized, an accused is "protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." *Addington*, 441 U.S. at 423, 99 S. Ct. at 1808 (footnote omitted). Where a jury has not been properly instructed on the highest measure of proof—beyond a reasonable doubt—and who carries that burden, we

9

cannot be assured of the fairness or have confidence in its determination of guilt. This is particularly true given that the error occurred within the context of a defense wherein the burden is normally shouldered by the accused. We conclude that the Justice Court's failure to instruct the jury that the State bore the burden of proving Akers's actions were not justified beyond a reasonable doubt denied Akers a fair trial and will leave unsettled the fundamental fairness of the proceeding.

¶18 Lastly, we address several arguments made by the State—specifically, that this Court may not consider Akers's claimed jury instruction error because Akers failed to raise it at the District Court or first-level appellate court. The State contends that in *Missoula v. Asbury*, 265 Mont. 14, 873 P.2d 936 (1994), this Court held issues not raised at the first-level appellate court cannot be properly raised before this Court. The State concludes that allowing Akers to present his jury instruction argument to this Court after failing to preserve it in the Justice Court and failing to raise it in the District Court would allow Akers to add a new legal theory "on his third bite at the apple." We disagree.

¶19 Although procedurally similar, the State's reliance on *Asbury* is misplaced. In *Asbury*, the appellants were several people arrested for blocking patients' access to a clinic that provided abortions. *Asbury*, 265 Mont. at 16, 873 P.2d at 937. A Municipal Court jury convicted the appellants of trespass, criminal contempt, and disorderly conduct. *Asbury*, 265 Mont. at 16, 873 P.2d at 937. At trial, the appellants raised an international laws or treaty defense. *Asbury*, 265 Mont. at 19-20, 873 P.2d at 939. The appellants appealed to the district court, but did not present the international laws or treaty defense issue. *Asbury*, 265 Mont. at 19-20, 873 P.2d at 939. The district court affirmed the

10

convictions and appellants then appealed to this Court, raising their international laws or treaty defense again. *Asbury*, 265 Mont. at 19-20, 873 P.2d at 939. In declining to address the issue, we stated "based on the Appellants' failure to raise the treaty issue at the first appellate level in the District Court, we conclude that the issue is not properly before us." *Asbury*, 265 Mont. at 20, 873 P.2d at 939. In *Asbury*, we held that the appellants failed to preserve the issue for our review because they abandoned the argument by not raising it at the district court level. *Asbury*, 265 Mont. at 20, 873 P.2d at 939 ("Here, of course, the 'treaty' issue *was* presented to the trial court which, in this instance, was the Municipal Court. However, the treaty issue was not presented to the first-level appellate court—here, the District Court." (emphasis in original)).

¶20    In contrast, Akers has not previously raised, before any other court, the error we address here. The principle underlying plain error review is "to correct error not objected to at trial but that affects the fairness, integrity, and public reputation of judicial proceedings." *Finley*, 276 Mont. at 134, 915 P.2d at 213. The plain error doctrine "is a doctrine that a reviewing court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." 5 Am. Jur. 2d *Appellate Review* § 716 (2014). This Court's power to conduct plain error review "is inherent in the appellate process itself." *Finley*, 276 Mont. at 134, 915 P.2d at 213 ("Appellate courts have the inherent duty to interpret the constitution and to protect individual rights set forth in the constitution and necessarily have the correlative authority to invoke the plain error doctrine in order to carry out those duties." (citation omitted)). If the error is preserved,

we apply a harmless error standard of review and the State has the burden of demonstrating the error was harmless. Conversely, if a defendant fails to properly preserve his or her issue for appeal, we apply the plain error standard of review and the defendant has the burden of proof. In *Asbury*, the Court did not consider plain error review; thus, the claimed error must have been preserved at the first-level appellate court in order for this Court to consider the issue. However, where a reversal is warranted following application of plain error review, this Court may exercise its discretion to rectify a trial court judgment that, as here, leaves unsettled the question of the fundamental fairness of the trial.

## CONCLUSION

¶21 We exercise plain error review to reverse Akers's conviction. We remand for further proceedings consistent with this Opinion.

¶22 Reversed and remanded.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE