FILED

10/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0548

DA 21-0548

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 204N

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

BRYAN HUGH HINDMAN,

  Defendant and Appellant.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-06-434
Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

  Gregory D. Birdsong, Birdsong Law Office, Santa Fe, New Mexico

  For Appellee:

  Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

  Kirsten Pabst, Missoula County Attorney, Matt Jennings, Deputy County Attorney Missoula, Montana

Submitted on Briefs: September 6, 2023

Decided: October 31, 2023

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Bryan Hindman (Hindman) appeals the Order of the Montana Fourth Judicial District Court, Missoula County, revoking his suspended sentence and sentencing him to twelve years in Montana State Prison.

¶3     On June 3, 2008, Hindman pled guilty to one count of sexual assault in violation of § 45-5-502, MCA. He was sentenced to twenty years in the Montana State Prison with eighteen years suspended and designated as a Level 2 sexual offender. As part of his suspended sentence, Hindman was required to follow several conditions, including a requirement that he attend Alcoholics Anonymous, Narcotics Anonymous, and Gamblers Anonymous meetings; complete a parenting class; maintain employment and inform his probation officer (PO) of any changes to employment; pay restitution for the victim's counseling and pay public defender and court costs; enter and complete a sexual offender treatment program (SOP); and refrain from accessing or possessing any material depicting human nudity or sexual acts. The District Court credited Hindman for 621 days of time served.

¶4     Hindman was released from prison on September 18, 2008. On October 22, 2008, Hindman's PO reported a violation after he failed to inform his PO that he had moved. The

2

State filed a Petition to Revoke (PTR) on October 28, 2008, and, following an evidentiary hearing before the District Court, Hindman's suspended sentence was revoked and he was sentenced to serve eighteen years with fourteen years and six months suspended. The District Court gave Hindman 99 days of credit for time served. Hindman was released from prison on April 16, 2012. On January 23, 2013, less than a year after being released for a second time, the State filed a second PTR after Hindman failed to complete SOP. Hindman had been terminated from SOP after failing to abide by the rules of the program, failing to follow the treatment plan, and for requesting narcotic medications from the staff. After hearing testimony from Hindman, his PO, and SOP, the District Court revoked Hindman's suspended sentence for a second time and sentenced him to fourteen years and six months, with twelve years suspended. He received a credit of 115 days for time served.

¶5 Hindman was released from Montana State Prison on June 26, 2015. On October 8, 2020, the State filed a third PTR alleging six violations of his probation. These violations included, among others, failing to comply with SOP by having inconsistent attendance and possessing pornography; failing to comply with internet restrictions by using VPN programs to mask his online activity and refusing to download the required monitoring programs; and downloading a "scanner app" which enabled him to track law enforcement. On September 1, 2021, a hearing was held during which Hindman's PO testified and recommended that Hindman be given 1,254 days credit for street time. Following the hearing, the District Court revoked Hindman's suspended sentence for a third time sentencing him to twelve years in the Montana State Prison with credit for 337 days time served and 1,254 days of street time.

3

¶6 On appeal, Hindman argues that he was not credited sufficient street time because there was no documentary or substantial testimonial evidence establishing any violations. Additionally, Hindman argues the record did not show prior reports of any violations by his PO or that his PO made an adequate effort to get Hindman to comply with his probation. Finally, Hindman argues that the failure of his "PO to promptly and properly respond to Mr. Hindman's unsatisfactory performance was fundamentally unfair to Mr. Hindman and implicitly violated his right to due process." He maintains that he should be credited for the entire 1,922 days of street time instead of the 1,254 days he was credited.

¶7 While Hindman argues that his right to due process was violated when the District Court failed to credit him for an additional 668 days and his PO failed to do more to address his noncompliance, Hindman makes this argument for the first time on appeal. Hindman, accordingly, can only obtain review by this Court if he demonstrates that he is entitled to plain error review. The plain error doctrine is to be "employed sparingly, on a case-by-case basis . . . ." *State v. Akers*, 2017 MT 311, ¶ 13, 389 Mont. 531, 408 P.3d 142. We may choose to review a claim under plain error "where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Akers*, ¶ 13 (citing *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79). For this Court to exercise plain error review, the defendant "must first demonstrate that the claimed error implicates a fundamental right." *Akers*, ¶ 13.

¶8 Hindman argues on appeal that his SOP provider and his PO failed to provide sufficient warnings that his noncompliance would have consequences. For example,

4

Hindman points to a lack of written reprimands, a failure to increase reporting requirements, and the absence of any referrals to enhanced supervision, intervention, or intensive supervision. Additionally, Hindman cites § 46-23-1011(4), MCA, which states that "[t]he probation and parole officer shall regularly advise and consult with the probationer using effective communication strategies and other evidence-based practices to encourage the probationer to improve the probationer's condition and conduct and shall inform the probationer of the restoration of rights on successful completion of the sentence." Although the record does indicate that Hindman was given three verbal reprimands and a referral to SOP Brenda Erdyli, he argues that this was insufficient.

¶9 Hindman's argument largely focuses on alleged shortcomings of his PO and the SOP and what they could have done to gain his compliance and better inform him of the risks of failing to adhere to his probation requirements. For example, although Hindman acknowledges that SOP providers do "not have a duty under the law" to inform a probationer's PO of failures to participate in a program, he argues that "it is intuitively clear that such a professional obligation must attach to Sex Offender treatment." However, in focusing on the alleged ways in which the SOP and PO failed him, Hindman glosses over the fact that he was fully aware that failure to follow his probation requirements could lead to revocation. He had already had his suspended sentence revoked on two separate occasions for repeated failures to adhere to his release requirements.

¶10 The record demonstrates an almost complete failure on Hindman's part to adhere to the conditions of probation. He was ordered to download monitoring software but failed to do so and, instead, downloaded two VPN applications to hide his online activity from

law enforcement; he was ordered not to possess pornography but had pornography saved on his cellphone and visited pornographic websites; he was ordered to complete SOP but was discharged due to repeated noncompliance, inconsistent attendance, having an excessive number of violations, and failing to keep up on payments despite being employed full-time.

¶11 This Court previously determined in *State v. Jardee* that "street time must be credited for time served unless there is evidence in the record or in the recollection of the probation officer that the defendant committed a violation of his sentence during the relevant period." 2020 MT 81, ¶ 13, 399 Mont. 459, 461 P.3d 108. In *Jardee*, Jardee received two consecutive five-year sentences with seven years suspended for felony partner family member assault. *Jardee*, ¶ 2. During the first year of his suspended sentence, the State filed a PTR after it received reports that Jardee had violated some of the terms of his release. *Jardee*, ¶ 3. Following a hearing, Jardee's suspended sentence was revoked and his request for street time was denied by the district court. *Jardee*, ¶ 4. In finding that Jardee was not entitled to credit for street time, the district court stated that there were numerous violations and "[i]t isn't 1 or 2 things, it was a whole pattern of his life and the Defendant is asking the Court to reward him for the last 3 months of his good behavior." *Jardee*, ¶ 4. We affirmed the district court, concluding that there was evidence in the record or recollection of the probation officer that supported Jardee was noncompliant during the relevant period of time that was in question. *Jardee*, ¶¶ 13-14.

¶12 As in *Jardee*, the record, here, demonstrates a pattern by Hindman of failing to comply with conditions of probation and having good behavior. Hindman's PO cited

6

numerous violations beginning as early as December 1, 2018. Hindman's PO stated that there was a "lack of participation in group and individual counseling," "constant unexcused absences," and a failure to "keep up on his payments to SOP despite having his rent paid for and working full-time." Hindman himself admitted to some violations during the hearing such as having VPN software on his cellphone and visiting unauthorized websites like "backpage.com."

¶13 While Hindman argues there were not enough warnings and consequences for his misconduct which was a failure of his PO's duty, he was given verbal warnings and had been revoked on two prior occasions. Moreover, there is nothing to indicate that alternative consequences would have been better or more likely to engage Hindman with remaining compliant. Although Hindman argues his PO's verbal warnings were insufficient to satisfy § 46-23-1011(4), MCA, there is no evidence that indicates verbal warnings are not "effective communication strategies" and "evidence-based practices," as required by the statute. This was Hindman's third attempt at release—having already been revoked twice for noncompliance—and he continued his pattern of failing to comply with probationary requirements.

¶14 Based on this record, we cannot conclude that failure to review further any of Hindman's claimed errors might result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or otherwise compromise the integrity of the judicial process. We, therefore, decline to exercise plain error review of Hindman's claim that his due process rights were violated.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶16 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE