FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0077

DA 23-0077

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 192N

JOSEPH WAYNE MARSH,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DV 22-34
Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Joseph Wayne Marsh, Self-represented, Deer Lodge, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Brad Fjeldheim,
Assistant Attorney General, Helena, Montana

      Nancy Rohde, Stillwater County Attorney, Columbus, Montana

Submitted on Briefs:  October 25, 2023

Decided:  August 27, 2024

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Joseph Wayne Marsh appeals pro se the December 2022 judgment of the Montana Twenty-Second Judicial District Court, Stillwater County, denying his petition for postconviction relief from his 2017 conviction on the offense of felony sexual abuse of children, and the January 2023 denial of his M. R. Civ. P. 59(e) motion to amend the court's judgment. We affirm.

¶3 In December 2017, Marsh pled guilty to felony sexual abuse of children based on the download and possession of, as well as use of peer-to-peer file-sharing software for, an extremely large amount of child pornography. The court later sentenced him to a 40-year prison term with no time suspended. Through counsel, Marsh appealed his conviction on the grounds that his sentence was illegal and his counsel constitutionally ineffective. We affirmed his conviction and sentence in *State v. Marsh*, 2021 MT 23N, 403 Mont. 544, 479 P.3d 526. There, Marsh argued that his sentence "rested on an improper understanding of the effect of statutory changes, implicating [his] due process rights,"[1] and that his counsel

---

[1] In response to defense recommendation of a 20-year DOC commitment with 15 years suspended for appropriate placement at a treatment facility, the court "expressed concern regarding" the effects of §§ 46-18-201(3)(a)(iv)(A), -208, and 46-23-1011(6), MCA, and "that its goal of ensuring long-term supervision might be 'short-circuited' by these statutory provisions unless the court imposed a sentence mandating prison time." *Marsh*, ¶¶ 5-8.

failed to specifically argue for application of certain statutory nonviolent offender mitigating factors. *Marsh*, ¶ 10. We held that Marsh's sentence was legal because within the 100-year maximum for the subject felony offense, and declined to exercise plain error review of his unpreserved claim that the court "reli[ed] on an erroneous interpretation of sentencing laws in effect at the time" because:

> Marsh's extensive collection of child pornography, admitted use of peer-to-peer file sharing, prior court martial for a similar offense, compulsive behavior, and moderate risk Level II designation under the psychosexual evaluation all support the District Court's conclusion that community safety required long-term supervision over Marsh. The sentencing court determined that, under the current statuary scheme, such a result was best achieved by a lengthy prison sentence, a decision within the court's discretion. The resulting sentence—well-below the statutory maximum—does not represent a manifest miscarriage of justice, an unsettled question of fundamental fairness, or an undermining of judicial integrity.

*Marsh*, ¶¶ 12-13. We further held that Marsh's counsel effectively advocated for "an alternative to a prison sentence" and, given the court's stated sentencing rationale, there was no indication that Marsh would not have received a prison sentence if counsel had explicitly addressed each nonviolent offender statutory mitigating factor. *Marsh*, ¶¶ 16-17.

¶4 In April 2022, Marsh filed a pro se district court petition for postconviction relief on the asserted grounds that: (1) the sentencing court illegally sentenced him based on "misinformation" regarding the sentencing provisions at issue on direct appeal in violation of his due process rights; (2) the prosecutor committed prosecutorial misconduct by providing the court "misinformation" regarding the same sentencing statutes; (3) his sentencing counsel was constitutionally ineffective for similarly providing the court "misinformation" and for failing to object to its reliance thereon, and for failing to object

3

to the alleged prosecutorial misconduct; and (4) his appellate counsel was constitutionally ineffective for failing to raise the issues of prosecutorial misconduct and ineffective assistance of sentencing counsel on appeal.

¶5     In December 2022, the District Court summarily denied Marsh's petition without State response or hearing pursuant to § 46-21-201(1)(a), MCA (authorizing discretionary summary dismissal where "the petition and the files and records of the case conclusively show that the petitioner is not entitled to relief").  Noting that Marsh's claims had been previously raised on direct appeal, the court rejected as incorrect his petition assertions that the sentencing court misunderstood and therefore erroneously applied the sentencing statutes previously at issue and concluded that Marsh was not entitled to postconviction relief.

¶6     In January 2023, Marsh filed a pro se M. R. Civ. P. 59(e) motion asking the District Court to reconsider and reverse its denial decision and "proceed[] forward with the merits" of his petition.  Marsh further asked the court to consider additional arguments regarding the legality of his sentence, i.e., that the sentencing court failed to consider and sentence him based on his diagnosed mental condition and that his sentence constituted cruel and unusual punishment.[2]  Because Marsh raised these new arguments for the first time

---

[2] Marsh argued specifically that the sentencing hearing testimony regarding his diagnosed autism-spectrum disorder constituted "clear and convincing proof to a medical certainty" that he satisfied "the requirements" of §§ 46-14-311 and -312, MCA (consideration of mental disease, disorder, or developmental disability at sentencing), and that the sentencing court was thus "statutorily mandated" to commit him to the custody of the Montana Department of Health and Human Services for treatment and not authorized to impose a sentence of incarceration.  This argument contradicted his original petition assertion that he was entitled to be "re-sentenced to significantly less custodial incarceration and significantly longer supervised release," required to

post-judgment, the court declined to address them and denied his motion. Marsh timely appeals pro se.

¶7 The issues that Marsh raises on appeal emanate exclusively from the claims he raised for the first time in his "Rule 59(e) motion," to wit: (1) his prison sentence was illegal because the sentencing court failed to consider his diagnosed mental condition and sentence him pursuant to §§ 46-14-311 and -312, MCA (consideration of mental disease, defect, or developmental disability at sentencing), to commitment to the custody of the Montana Department of Health and Human Services in lieu of incarceration; (2) sentencing and appellate counsel were constitutionally ineffective for failing to argue that §§ 46-14-311 and -312, MCA, applied; (3) he is entitled to plain error review of his new claim regarding the legality of his sentence because the resulting 40-year prison sentence constituted cruel and unusual punishment; and (4) he is entitled to amend his PCR petition and argue the merits of his new assertions of error at district court. The State answers that all of Marsh's claims are unsupported or procedurally barred.

¶8 A person convicted "of an offense in a court of record who has no adequate remedy of appeal and who claims" that his conviction occurred in violation of the constitution of the United States, State of Montana, or Montana law may file a verified petition "to vacate[] [or] set aside" the conviction. Sections 46-21-101(1) and -103, MCA. However, the petitioner has the burden of showing the asserted illegality by a preponderance of the evidence under the applicable law. *Heath v. State*, 2009 MT 7, ¶ 16, 348 Mont. 361, 202

complete Phase I sex offender treatment "in prison," and then be "immediate[ly] release[d]" to complete Phase II in-community.

P.3d 118; *Ellenburg v. Chase*, 2004 MT 66, ¶ 12, 320 Mont. 315, 87 P.3d 473; *State v. Cobell*, 2004 MT 46, ¶ 12, 320 Mont. 122, 86 P.3d 20. "A district court may dismiss a petition for postconviction relief as a matter of law, and we review a court's conclusions of law for correctness." *Herman v. State*, 2006 MT 7, ¶ 13, 330 Mont. 267, 127 P.3d 422; *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. Whether the lower court correctly dismissed a postconviction IAC claim presents a mixed question of law and fact reviewed de novo. *Whitlow*, ¶ 9; *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, 12 P.3d 934.

¶9 First, any claim or related assertions that the sentencing court relied on or any counsel provided, argued, or failed to object to "misinformation" regarding the statutes previously at issue on direct appeal, *supra* Opinion, ¶ 3 n.1, were raised by Marsh's appellate counsel and considered by this Court in *Marsh*, ¶¶ 5-8 and 10-17, and are thus procedurally barred here.[3] *See* § 46-21-105(2), MCA ("[w]hen a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a [postconviction] proceeding"). Accordingly, Marsh was not entitled to postconviction relief for any of the reasons asserted in his December 2022 petition.

---

[3] Likewise Marsh's petition assertion of prosecutorial misconduct, ineffective assistance of sentencing counsel for failure to object thereto, and ineffective assistance of appellate counsel for failure to raise on appeal, which the State correctly notes Marsh has abandoned here.

¶10     Second, Marsh is not entitled to plain error review of his new claims regarding the legality of his sentence. As a narrow exception to the general rule, we may, in our discretion, review an issue raised for the first time on appeal when deemed necessary to correct plain error. *State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142. Plain error is a doctrinal exception to the general rule that a record-based assertion of error not contemporaneously raised before the trial court, and thereby preserved for appeal, is waived and thus not subject to review on direct appeal. *See State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72; *Akers*, ¶ 10. It is not a cognizable freestanding claim for relief on collateral review of a prior criminal conviction for which the petitioner was previously afforded the remedy of direct appeal. *See* §§ 46-21-101(1) and -105(2), MCA.

¶11     We previously held on direct appeal that Marsh's sentence was legal, within statutory parameters, and did not "represent a manifest miscarriage of justice, an unsettled question of fundamental fairness, or an undermining of judicial integrity." *Marsh*, ¶¶ 12-14. *See also Basto v. State*, 2004 MT 257, ¶¶ 14-17, 323 Mont. 80, 97 P.3d 1113 ("a sentence within the maximum statutory guidelines does not violate the Eighth Amendment prohibition against cruel and unusual punishment"). Marsh is thus procedurally barred from challenging the legality of his sentence again here. *See* § 46-21-105(2), MCA; *State v. Osborne*, 2005 MT 264, ¶¶ 14 and 19-20, 329 Mont. 95, 124 P.3d 1085 (we consistently apply the § 46-21-105(2) "statutory bar in order to prevent the abuse of post-conviction relief by criminal defendants who would substitute those proceedings for direct appeal"—citing *Basto*, ¶ 15). Moreover, contrary to Marsh's assertions, the sentencing court heard

7

extensive testimony regarding his diagnosed mental condition and considered it at length. *See Marsh*, ¶¶ 4 and 13 (discussing sentencing hearing testimony of evaluating clinical psychologist, clinical social worker, probation officer, and Marsh's friends and family regarding his autism-spectrum disorder and noting that Marsh's autism-attributed "compulsive behavior[s]" considered in court's sentencing rationale). Marsh is not entitled to plain error review.

¶12    Third, Marsh has not demonstrated that his sentencing counsel was constitutionally ineffective for failing to argue that §§ 46-14-311 and -312, MCA, applied. Under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24, of the Montana Constitution, criminal defendants have a fundamental right to effective assistance of counsel at all critical stages of criminal proceedings. *Whitlow*, ¶¶ 10-11 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)). The performance of counsel was constitutionally ineffective only if both deficient and prejudicial. *State v. Herrman*, 2003 MT 149, ¶ 17, 316 Mont. 198, 70 P.3d 738. This IAC claim is substantively equivalent to Marsh's argument on direct appeal that his counsel was constitutionally ineffective for failing to specifically argue applicability of statutory mitigating factors pertinent to nonviolent offenders. *See Marsh*, ¶¶ 15-17. Marsh's diagnosed autism-spectrum disorder was likewise front and center at sentencing. *See Marsh*, ¶¶ 4 and 13, *supra*. However, no defense or State's witness testified that Marsh's autism rendered him incapable of appreciating the criminality of his conduct or conforming it to the law.[4]

---

[4] *See* § 46-14-311(1), MCA (providing that "[w]henever a defendant is convicted on . . . a plea of guilty . . . *and claims* . . . at the time of any change of plea by the defendant that at the time of the

In fact, the clinical social worker, clinical psychologist, and Marsh himself testified to the contrary.[5] Any assertion or argument that Marsh should be committed to the custody of DPHHS in lieu of incarceration would thus have been wholly unsupported by the evidence and without merit. Instead, as we stated on direct appeal, Marsh's counsel "repeatedly pushed for an alternative to a prison sentence" and counsel's conduct thus did not "deviat[e] from the broad range of reasonable professional assistance." *See Marsh*, ¶¶ 4 and 16. As with his prior IAC claim, Marsh has not demonstrated that the outcome would have been different if counsel had argued that §§ 46-14-311 and -312, MCA, applied

---

commission of the offense . . . [he] was suffering from a mental disease or disorder or developmental disability that *rendered [him] unable to appreciate the criminality of [his] behavior or to conform [his] behavior to the requirements of law*, the sentencing court shall consider any relevant evidence presented at the trial and may also consider the results of the presentence investigation"—emphasis added); § 46-14-312(2), MCA ("[*i*]*f the court finds* that the defendant at the time of the commission of the offense suffered from a mental disease or disorder or developmental disability . . . , [it] shall sentence the defendant to be committed to the custody of the director of the department of public health and human services" for placement "in an appropriate correctional facility, mental health facility, residential facility, or developmental disabilities facility for custody, care, and treatment"—internal statutes omitted, emphasis added).

[5] When asked about Marsh's autism and "intellectual levels," the evaluating clinical social worker responded that it was "obvious . . . that he had some learning difficulties, but he seemed to understand the questions [posed during evaluation] based upon how he responded to them" and "his demeanor." When asked if Marsh "seem[ed] to have a grasp of the criminality of the offense" and "why it was wrong," the evaluator answered "yes" to both. When asked whether a person, like Marsh, who had been previously convicted and imprisoned on a similar offense, but who had not undergone formal court-ordered sex offender treatment, would have trouble "grasp[ing] that . . . there's something wrong with what he did," the evaluating clinical psychologist answered that "even at the time" he examined Marsh, "he would have had some recognition that what he had done was inappropriate," but not "the more complete understanding that a person gains after they have participated in sex offender treatment." Marsh similarly acknowledged and expressed remorse that his "decision to view child pornography . . . has life-long devasting effects on these children[,] children's lives[,] and the lives of their family, too," and that, "by viewing this illegal material," he "contributed [to] and encouraged the continued abuse of these innocent children."

to preclude a sentence of incarceration. As we previously stated, the sentencing court "was *quite clear* that, despite the testimony on Marsh's behalf, [its] *primary concern* was the element of public safety, which the [court] deemed sufficiently protected *only by a prison sentence.*" *Marsh*, ¶ 17 (emphasis added). Marsh cannot show prejudice resulting from counsel's conduct and therefore his IAC claim fails.[6]

¶13 Finally, Marsh asks this Court to excuse any procedural defaults and permit him to amend his original PCR petition and have his claims regarding §§ 46-14-311 and -312, MCA, reviewed on the merits. Section 46-21-105, MCA, expressly provides for amendment of an original PCR petition. However, nothing in § 46-21-105, MCA, authorizes amendment of an original PCR petition *after* the district court has properly denied the originally-asserted claims for relief, thereby allowing the petitioner to assert a new claim for relief which reasonably could have been raised in the first instance. *Compare State v. Root*, 2003 MT 28, ¶ 12, 314 Mont. 186, 64 P.3d 1035 ("[a]mended petitions are governed by § 46-21-105(1)(a), MCA, which contemplates that a petition may be amended *during the course of an ongoing proceeding* that was timely initiated"—emphasis added).

¶14 We hold that the District Court correctly dismissed Marsh's petition for postconviction relief. We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed.

/S/ DIRK M. SANDEFUR

---

[6] Marsh's ineffective assistance of appellate counsel claim fails for the same reason.

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE