No. 14207

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

RUSSELL COUNTS,

               Petitioner and Respondent,

   -vs-

DELSEY CHAPMAN, f/k/a DELSEY HANKS,
f/k/a DELSEY COUNTS,

               Respondent and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

        Richter, Lerner and Nye, Billings, Montana

    For Respondent:

        Davidson, Veeder, Baugh & Broeder, Billings, Montana

---

                     Submitted on briefs:  July 26, 1978

                          Decided: JAN

Filed:

Thomas J. Kearney
                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal is from an order of the District Court of the Thirteenth Judicial District, Yellowstone County, Montana, granting modification of a divorce decree as to custody of the children.

Plaintiff wife, Delsey Counts, obtained a decree of divorce from defendant, Russell Counts, on May 17, 1971. In that decree, wife was granted custody of the four children of the parties, Becky Lynn, Michelle Lorraine, Edward Russell and Webster Dean. Husband was ordered to pay the sum of $100 per month to the wife for support money for the children and was given reasonable visitation rights.

On June 27, 1973, the husband petitioned for a modification of the decree asking that he be awarded custody of the four children for 9 months of the year and that plaintiff wife have custody for the remaining 3 months, with the support monies adjusted accordingly. The wife, then known as Delsey Hanks, filed a counter-petition at that time requesting the court to grant her $65 per month for each of the minor children to be paid as support money by the husband. Nothing ever came of that petition or counter-petition.

On May 26, 1977, husband, Russell Counts, petitioned for a modification of the divorce decree, asking that custody of the 4 children be granted to him. Wife, then known as Delsey Chapman, filed her counter-petition, requesting that: (1) custody of the four children be continued to her; (2) the Court determine the amount of back payments due to her from husband for support monies; (3) she be awarded attorneys fees; and (4) the original decree be modified so she would be entitled to receive $100 per month for each of the children of their marriage.

On November 4, 1977, District Court entered its order here appealed therefrom, in which the District Court granted to

-2-

husband full custody of the 4 children of the parties, and determined the husband owed the wife $2,894.20 in back support payments.

The wife then moved for a new trial on the single ground there had been no record made of an interview by the District Court of the 4 minor children about their wishes concerning their custody. No ruling was made by the District Court on this motion, and, it being deemed denied, appeal was taken by plaintiff wife to this Court.

No stenographic transcript of the proceedings before the District Court regarding the hearing on petition for modification by the husband or counter-petition of the wife, has been filed in the Court. The District Court did not make findings of fact and conclusions of law as such (no appeal is taken as to this point) but attached to the order appealed from, is a memorandum of law and fact by the District Court from which we glean the following pertinent facts:

After the divorce decree of May 17, 1971, both parties subsequently remarried, the father, to a woman having 3 children by a prior marriage and the mother, to a man having 1 boy by a prior marriage. The father's second marriage is still intact. The mother's second marriage failed, a divorce occurred, and in March 1977, the mother married again, this time to a man employed or to be employed in Canada. It was necessary she move to Canada with her husband. After con-sultation with school authorities, the mother decided to defer moving the children until after the close of the school year. She placed 3 of the children with their father and 1 with another relative, intending that after school they would all move to Canada with her. The father later ended up having all 4 of the children with him from March 1977. On May 26, 1977, shortly before the mother was to take the children,

the father filed his petition requesting modification of the decree so as to award permanent custody of the children to him.

The memorandum of District Court summarizes evidence respecting the best interests of the children as follows:

"The children involved are two girls, ages 14 and 12 years, and two boys, ages 9 and 8 years. The mother acknowledges that the oldest child, Becky Lynn Counts, desires to stay with her father and agrees that her wish should not be resisted. The mother also does not challenge that the other children have expressed a wish to stay with their father, but she feels that this is only the product of their having been with their father the past few months, resulting in a practical influence upon them even if not an intentional one.

"Over the span of time that the mother has had the children, there have been some difficult times in 'getting used to a new father' and in living through the changes of a second separation and divorce. Such difficulties have manifested themselves in the children's school progress, with the two boys having failed one year each, and the girls having poor attendance records. The oldest girl did not, for example, attend a sufficient number of days last year to earn a grade, she being given an 'incomplete.' A number of the school personnel testified at the hearing on this matter, and it is apparent from their testimony that continuation of the childrens' problems became interrupted only after they went with their father. From that period on considerable improvement was noticed. The logical conclusion from this is that at least the educational progress of the children was being seriously affected by the custodial situation existing with the mother. Whether the mother's new situation in Canada would correct or aggravate this situation would be entirely a matter of speculation and cannot form the basis for a finding by the Court."

Based upon the foregoing, the Court determined the requirements of section 48-339, R.C.M. 1947, regarding custody had been met and the best interests of the children necessitated a modification, as prayed for by husband.

The single issue presented by appellant wife in this appeal is the District Court erred in not requiring a verbatim transcript of the Court's interview with the minor children as to their wishes respecting their custody. Appellant is necessarily limited to this single issue because counsel for both parties have stipulated for this appeal, that no stenographic or verbatim record was made of the trial court proceedings in the matter; no stenographic or verbatim record was made of the trial court in chambers interview of the children in this matter; and both parties by and through their counsel of record at trial, waived stenographic or verbatim record of all the proceedings before the trial court in this matter though Mrs. Chapman, appellant, states her trial counsel did not discuss this waiver with her. (Appellant's counsel on appeal is not the same as her counsel at trial.) For us, therefore, the single issue becomes whether the statutory requirement of a verbatim transcript of the court interview of the minor children is a provision that can be waived by the parents in a dissolution of marriage proceeding.

First, we look at the statute involved. Section 48-334(1), R.C.M. 1947, provides:

> "The court may interview the child in
> chambers to ascertain the child's wishes
> as to his custodian and as to visitation.
> The court may permit counsel to be present
> at the interview. The court shall cause
> a record of the interview to be made and
> to be part of the record in the case."
> (Emphasis added.)

In Ronchetto v. Ronchetto (1977), _____ Mont. _____, 567 P.2d 456, 458, 34 St.Rep. 797, a case where we reversed the District Court on a child custody decision, we note that on remand, if the court desired to interview the child concerning his wishes, it could be done, but in that event, the court must make a record of the interview to be considered part

-5-

of the record of the case. However, Ronchetto v. Ronchetto was not decided on that precise ground. In Schiele v. Sager (1977), ____ Mont. _____, 571 P.2d 1142, 34 St.Rep. 1358, we reversed a District Court in a child custody decision. One of the grounds upon which we relied on in that case was the fact that the District Court had not made a record of its interview of the minor children involved.

In the Matter of Geary (1977), _____ Mont. _____, 562 P.2d 821, 34 St.Rep. 218, an appeal involving a youth in need of supervision (not a divorce proceeding), we held that because the dispositional hearing was not recorded verbatim in the District Court, that therefore under section 10-1220(3), R.C.M. 1947, the case required reversal.

In the Matter of the Guardianship of the Gullette Children, (1977), _____ Mont. _____, 566 P.2d 396, 34 St.Rep. 277, a contested guardianship case, this Court held that the lack of a stenographic record of the contested hearing required reversal.

In this case now before us, the stipulation executed by the parties with respect to the waiver of transcript of all proceedings presents a different aspect from the cases above cited. In Ronchetto, the pivotal point in the case was the fact the District Court had allowed hearsay testimony with respect to the best interests of the child and it was on that ground the reversal occurred. In Schiele, the lack of verbatim record of the children's interviews was one of the points on which the case turned, but there is no indication in the records that a stipulation dispensing with such verbatim records had occurred in the trial. In Geary, there was a complete lack of stenographic report of all the proceedings in the District Court, sitting as a Youth Court, under a statute

-6-

that required a verbatim record, particularly for use in appeal. In Gullette, there was a contested guardianship proceeding. The lack of stenographic record was one of the points on which this Court relied for reversal. In Gullette and Geary, the children themselves were parties before the court.

Under the Uniform Marriage and Divorce Act, the District Court in determining custody of children looks at the best interests of the children and weighs all relevant factors, including those listed in section 48-332, R.C.M. 1947. That statute lists five different factors affecting the best interests of the child. Only one of these factors is the child's wish as to his custodian, although that is undoubtedly an important factor. Hurly v. Hurly (1966), 147 Mont. 118, 411 P.2d 359. Nonetheless, it is but one of five important factors set out in the statute.

Because the court might wish to conduct the interview of the children in chambers, away from the trial, and indeed, if necessary, away from the presence of the parents, provision is made in section 48-334, R.C.M. 1947 for such interview to occur in chambers, where counsel may be permitted to be present. In order to have a complete record however, section 48-334 provides the interview should be recorded and made a part of the record in the case. It is obvious the ultimate purpose of the requirement of a record of the children's interviews is to accord the parties to the action, the husband and wife, a full record which would support any finding the court might make regarding wishes of the children, and the bearing of those wishes in his final decision. In a dissolution of marriage, however, the children are not parties to the action and the reason for the statute requiring a record of

-7-

interviews is to serve the interests of the parents who are actually parties to the action. If one of the parties therefore, knowing the Court will interview the children, and that such interview will weigh in the Court's decision as to their custody, nevertheless waives a verbatim record of such interview, then we must hold such party has voluntarily waived a known right and cannot complain about lack of record in this Court.

We are not faced here with the problem that might arise if the District Court had not affirmed the wishes of the children. If that had occurred, then our paramount concern for the children's best interests, Lee v. Gebhardt (1977), _____ Mont. ____, 567 P.2d 466, 34 St.Rep. 810; Schiele v. Sager (1977), ____ Mont. _____, 571 P.2d 1142, 34 St. Rep. 1358, might have obligated us to send the custody problem back with a proviso that an attorney be appointed to represent the children, and a verbatim record be made of their interviews. In this respect, this case is different from Kramer v. Kramer (1978), _____ Mont. ____, 580 P.2d 439, 35 St.Rep. 700. On the face of this record, as the memorandum of the District Court indicates, the best interests of the children are being served.

Appellant wife contends the waiver was not discussed with her by trial counsel at the time the waiver was made. As far as the Court and other counsel are concerned however, she is bound by stipulations made by her counsel entered in open court. Section 93-2101, R.C.M. 1947.

When appellant wife, through her counsel, waived a transcript of all proceedings in the District Court, she thereby placed herself wholly within the discretion of the District Court as to the issues presented to him. This Court is powerless to put a District Court in error without

-8-

a record, Francis v. Heidel (1937), 104 Mont. 580, 68 P.2d 583, unless there appears inherent error, Aquettaz v. Chicago, Milwaukee & St. Paul Ry. Co. (1937), 104 Mont. 181, 65 P.2d 1185.

Affirmed.

_____
                Justice

We Concur:

_____
Chief Justice

_____
        Justices

Mr. Justice Daniel J. Shea dissenting:

I cannot agree with the decision of this Court that the wife waived her right to have the hearings recorded and to have a court reporter record the interviews between the trial court and the children. I would reverse the trial court and order a new trial because the first trial was held without a record being made.

Here the wife claims that the lawyer who represented her at the trial level did not discuss with her whether or not she would waive the use of a court reporter to record the proceedings. We are involved here, not with a technical question of whether the client should be bound by the acts of her lawyers, as majority states, in relying on section 93-2101, R.C.M. 1947. Rather, we are involved with the very foundation of appellate review--the requirement of a record, if review is to be effective. Indeed, the majority recognized the ineffectiveness of review with a record by stating "this Court is powerless to put a district court in error without a record, . . . unless there appears inherent error, . . ." The essence of this holding is that a District Court can deprive this Court of effective review by simply not providing a court reporter to record the proceedings at trial. The potential evils engendered by this kind of attitude require no additional comment.

It is of little consolation to the wife here that we hold her lawyer waived her right to a court reporter and consequently, to a meaningful appeal. Too often, when counsel agrees to the waiver of a record, he does so in an effort to accomodate the court and the court reporter, not to protect the interests of his client. The failure to have

a court reporter to record the trial court proceedings goes to the very heart of the administration of the court system.

The waiver that the Court has relied on here, namely that of counsel waiving the rights of his client to a recording of the hearing, is so fundamental that it should not be allowed without the personal waiver of the client. For this personal waiver to be effective, it should be spread upon the record. The client should be informed of the right to have a record; he should be informed of the uses to which a record is put; and he should be informed of the consequences of the failure to have a record, namely that almost total discretion is being reposed in the district judge, and that if the case is appealed there will be no effective and meaningful method of presenting the appeal. Perhaps then, if the client does not want a record, a waiver would be effective. And, being that the waiver should be spread upon the record, presumably taken down by a court reporter, perhaps the court reporter could even be persuaded to stay awhile and make a verbatim record of the hearing, which, after all, is his duty.

The problem with a lack of a record, which so often arises, has convinced me that there is a need for fundamental change in the way that verbatim records are recorded at the District Court level. Too many of the court reporters believe that the courts, counsel and the parties, exist only for the convenience and monetary benefit of the court reporters. They fail to recognize that they are servants of the public and the judicial system and that their duty to record trials and other hearings before the court takes precedence over other activities such as taking depositions, statements, etc. It must be remembered that court reporters are on a full-time

-11-

salary, and this means they should be full-time public servants. It is the duty of the District Court judges to see to it that the court reporters in their employ are present to record the judicial proceedings which the particular judge is handling.

I am convinced that electronic recording systems installed in the District Court may well be the only long-lasting and meaningful answer to the problem. If this court is unwilling to address the fundamental problems involved with the failure of court reporters to properly perform their functions, then I am convinced that the only redress is to have comprehensive legislation whereby electronic recording systems are mandated, and the duties of the court reporters are redefined, with commensurate salary reductions.

Daniel J. Shea