No. 80-51

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

IN RE THE MARRIAGE OF

MERRIE DAWN  MARKEGARD,

Petitioner and Appellant,

vs.

JOHN ERIC MARKEGARD,

Respondent and Respondent.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Davidson, Veeder, Baugh, Broeder & Poppler, Billings, Montana

For Respondent:

Berger, Anderson, Sinclair & Murphy, Billings, Montana

Submitted on briefs: April 24, 1980

Decided: AUG 2 8 1980

Filed: AUG 2 8 1980

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Merrie Markegard (herein referred to as the mother) appeals from that portion of a marriage dissolution decree entered in Yellowstone County District Court awarding custody of the parties' twenty-month old son to John Markegard (herein referred to as the father).

The mother contends that the trial court erred in the following respects: (1) that the trial court ignored the relevant factors in section 40-4-212, MCA, with regard to a determination of custody; (2) that the trial court failed to properly consider the presumption that a mother is entitled to custody of a child of tender years; and (3) that the decision is bottomed on a determination which in essence discriminates against the mother because she is now an Oregon resident. We vacate the order of the trial court because it did not consider the appropriate factors contained in section 40-4-212.

The marriage was of short duration. The parties were married on May 30, 1976 and in October 1978, the mother filed a petition to dissolve the marriage. A son was born of the marriage. The mother is a nurse and currently resides in Portland, Oregon, where her parents also reside. The father lives on a farm between Laurel and Park City, Montana. He has resided in Montana all of his life and farms land leased from his father.

After filing a dissolution action, the mother continued to live in Montana for a short time, living with friends. She was, however, unable to find employment and moved from Billings to Portland in November 1978 to find employment. She had temporary custody of the child and the father was paying temporary child support.

After a hearing on child custody, the trial court entered judgment finding that both parents loved the child, both were fit and proper parents, and both parents wanted custody. The court concluded that all things being equal, the best interests of the child would be better served by keeping the child in Montana and therefore awarding custody to the father. The apparent reasoning of the trial court is that a court of this state would be able to continue to protect the child and promote the child's welfare and best interests. Why a court in Oregon, should the need arise, not be able to do the same thing, we are not informed. The mother was given visitation rights. This appeal followed.

Section 40-4-212 sets forth the criteria for a trial court to consider and weigh in deciding the issue of child custody. Although three of the five factors are not pertinent here, the trial court's findings on the other two factors are nothing more than conclusory statements, not reflecting at all the evidentiary basis for the decision. In determining child custody, the trial courts must consider the statutory criteria, Counts v. Chapman (1979), ___ Mont. ___, 589 P.2d 151, 36 St.Rep. 89, 93; and as a reviewing court we can only determine if the pertinent factors were considered and if the trial courts made appropriate findings with relation to these criteria. In Re Marriage of Capener (1978), ___ Mont. ___, 582 P.2d 326, 328, 35 St.Rep. 1026.

Admittedly, several factors set forth in the statute are not pertinent to this case. Section 40-4-212(3), however, requires the trial court to consider the interaction and interrelationship of the child with his parent or

parents, his siblings, and any other person who may significantly affect the child's best interest. The findings with respect to the father are sufficient but they are insufficient with respect to the mother. We cannot overlook this factor in light of the fact that the child lived with the mother in Portland for approximately one year before the dissolution hearing and that the child's maternal grandparents also live in Portland.

Section 40-4-212(4), MCA, requires the trial court to consider the child's adjustment to his home, school, and community. School is not a factor here, but the child's adjustment to his home is an important factor which must be considered and findings made. No such findings were made here.

Section 40-4-212(5), MCA, requires the trial court to consider the mental and physical health of all individuals involved. There are no findings at all with relation to this factor. Although the record is replete with evidence relating to the mother's mental and physical health, there are absolutely no findings with relation to her health. Furthermore, the child has an eye problem which has required medical and surgical attention which was not expressly addressed.

Although we must vacate the judgment and remand for another hearing, there are two matters that we will address. The mother contends that the trial court did not consider or apply the presumption that a mother is entitled to custody of a child of tender years. This presumption is no longer statutory. We stated in the case of In Re Marriage of Tweeten (1977), 172 Mont. 404, 409, 563 P.2d 1141, 1144, that this presumption still exists. Reflection on this question, however, causes us to believe that the presumption should

not exist in the absence of a particular statute so declaring. We do not believe that there is a sound theory or rationale in support of a judicial declaration that such a presumption exists. We further believe that this presumption is outdated in light of the enactment of the Uniform Marriage and Divorce Act in this state. The presumption serves only to confuse the parties and to burden the courts. For this reason, we overrule Tweeten with respect to the tender years presumption.

The second matter upon which we choose to comment is the trial court's determination that the child would be better off in Montana. Although we cannot say that residence was the sole basis underlying the trial court's decision awarding custody to the father, it appears from the trial court's findings that the residence of the parties was an important consideration. Under section 40-4-212, MCA, residency is a factor to be considered in determining custody. But the clear implication here is that somehow the Montana courts could protect the welfare of the child but the Oregon courts could not. Because there is no evidence that the child needed court protection or intervention--both parties were declared fit and proper and both wanted custody--we see nothing that a Montana court could do that an Oregon court could not also do. Any concept of parens patriae under these facts is misapplied. To hold contrary would result in penalizing a parent because he or she has moved to another state. There is nothing in the record here to show that a court probably would be involved in the future with relation to the child.

We vacate the decree with relation to child custody and remand for another hearing, and direct that appropriate

findings and conclusions be entered consistent with this opinion.

_Daniel J. Shea_
Justice

We concur:

_Frank J. Haswell_
Chief Justice

_Gen B Daly_

_John Conway Harrison_
Justices

Mr. Justice John C. Sheehy concurring in part and dissenting in part:

I concur with the majority that the mother should not have custody of a child of tender years as a matter of presumption. However, the majority opinion does not state, as I think it should, that when a child is of tender years in a custody dispute, the tender age of the child should be a factor in considering whether custody should be given to the mother.

As to the rest of the opinion, I dissent.

The wife did not come to this appellate court contending that the District Court had not made findings on the criteria in section 40-4-212(4), MCA that are set out in the majority opinion. The wife does not contend for that in this appeal at all. Rather, the wife contended that as between the mother and the father, "the trial court [had] specifically found that all things are equal between the parties" and that in that situation, the presumption entitled the mother to the custody of the minor child. In the language of the wife's brief, her contention under section 40-4-212 was:

> "If the presumption that the mother is entitled to custody of children of tender years is to have any bearing at all, surely in this case where all things not only were equal but also were declared so by the court, custody must reside in the mother . . ."

The majority is therefore reversing the District Court on issues not raised by the wife and moreover, not substantiated by evidence in the record at the trial.

For example, the majority refers to the "interaction and interrelationship of the child with his parent" and states that the findings with respect to the father were sufficient but are insufficient with respect to the mother. The reason that the District Court can make no findings with respect to the interrelationship of the child with the

-7-

mother, and the maternal grandparents, is that for some reason not disclosed by the record, the mother offered no evidence of how her child was reacting to the family environment in Portland where the child had been residing with the mother and the maternal grandparents at the time of the trial. Thus, the decision of the District Court here in favor of the father is being reversed out of the failure of the mother to produce the evidence which this Court says should result in findings.

Nor do I agree that the trial court did not consider the mental and physical health of all the individuals involved. The mother made a point during the trial that her husband had not kept the child's glasses on the child when he had temporary custody. The father refuted this by producing eighteen pictures of himself with Eric, all showing the child wearing his glasses. The father's health is evident from the fact that he is an active farmer near Laurel, working long hours in pursuing his occupation. The mother's health indicated that she had had a very difficult labor in the childbirth of Eric; that she had gone to the hospital after using hashish; that she was diagnosed as manic depressive at the time; that she had been on a number of medications which her second doctor thought were unnecessary; that she "couldn't stand sitting at home" after the baby was born, volunteered to do nursing work at Planned Parenthood, and celebrated this occupation by going out with a Mr. Schuster and buying him a bottle of wine. It was during her evening with Mr. Schuster that the hashish incident happened and she was removed to the hospital. I think the court fully considered her health in determining the custody of Eric.

Nor do I construe the District Court's placing custody of Eric with the father in Montana implicitly meant that Montana

-8-

was a better place than Oregon to raise children. The finding of the District Court provides in part:

> ". . . that in the immediate area of the respondent's home are the respondent's father and mother and the respondent's brother and sister-in-law together with their children; that during the course of the marriage the sister-in-law baby-sat the minor child from time to time; that the entire Markegard family is well thought of in the community, is a good and substantial family, and are all concerned as to the welfare of the minor child and his opportunity to grow up within the family; to grow up with his cousins, his uncles and aunts, and his grandparents; that the welfare of the child would be best promoted by having an opportunity to grow up in the environment of the Markegard community. The interest of the Markegard family in the welfare of the minor child is so great that a number of the aunts and uncles traveled to Portland, Oregon, on two occasions to visit the child, in the custody of the mother, during the year 1979."

I do not derive any implicit statement that Montana is a better place to grow up than Oregon from the above finding. In the face of the lack of evidence regarding the Oregon environment for this child, the court had no choice but to decide that the Laurel community was in the best interests of the child.

What the District Court did in this case was to choose between certainty and uncertainty. If this Court had granted custody to the mother, I should have been greatly concerned about the uncertainty of the mother's occupation, her ability to cope with pressure situations, of the situation at the home of the maternal grandparents, from which home both the mother and her sister departed because of the unrefuted contention of the mother that her parents were "crazy".

For the foregoing reasons, I would sustain the custody decision of the District Court.

_John C. Sherry_
Justice

-9-