Justice Ingrid Gustafson delivered the Opinion of the Court.
***510 ¶1 Adam Hatfield (Adam) appeals his conviction for deliberate homicide following a jury trial in the Second Judicial District, Butte-Silver Bow County. We affirm.
¶2 We restate the issues on appeal as follows:
1. Did the District Court violate Adam's right of presence and thus commit reversible error?
2. Did the District Court err by failing to make a record of critical stages of Adam's trial?
3. Did the District Court err by failing to ensure the proceedings in this matter were public?
4. Did the District Court abuse its discretion by allowing witnesses to testify multiple times on direct examination?
5. Did Adam's trial counsel commit record-based ineffective assistance of counsel?
6. Does cumulative error in this matter warrant a new trial?
*573 FACTUAL AND PROCEDURAL BACKGROUND
¶3 On the evening of November 28, 2008, Matt Hatfield (Matt) dropped off a friend after a day of hunting. Later that night, he spoke with his ex-wife on the phone. There are no credible accounts of anyone seeing or speaking with Matt after that day.
***511 ¶4 Although it was not unusual for Matt to be out of contact for a few days, his absence stretched into weeks, and friends and family members became concerned. The Butte-Silver Bow Police Department began investigating Matt's disappearance in mid-December.
¶5 Investigators looked for Matt at the small cabin in which he lived on his mother's property near Butte. Matt's mother, who suffered from dementia, was unable to provide any assistance. Inside Matt's cabin, the investigators discovered blood spatter and signs that someone had attempted to clean it up. However, they did not locate Matt; searches of the property and surrounding area were fruitless.
¶6 Investigators also interviewed Matt's friends and family. The police learned Matt's son, Adam, had recently been seen driving Matt's pick-up truck around Butte. They questioned Adam, who claimed Matt had loaned him the truck. Adam denied knowing his father's whereabouts.
¶7 In late December, Adam parked Matt's truck on a street in Butte after it sustained front-end damage that made it undriveable. On December 24, 2008, the police obtained a search warrant for the truck and had it towed for the crime lab to examine it.
¶8 In October 2010, a hiker found a partial human skull in the Maney Lake area. In November 2013, investigators identified the partial skull as Matt's. In 2014, authorities arrested Adam and charged him with deliberate homicide. No other remains were found.
¶9 Adam was first tried for Matt's homicide in April 2015. After the jury failed to reach a verdict, the court declared a mistrial.
¶10 The State determined to retry Adam. During a pre-trial conference on January 29, 2016, Adam's counsel objected to the State's plan to call and later recall two law enforcement witnesses on direct examination, arguing this strategy would either limit his ability to effectively cross-examine the witnesses' credibility or would force him to ask the same questions multiple times. The State explained its purpose in recalling these witnesses was to allow them to testify to the progress of their investigation in chronological order, since the investigation into Matt's disappearance and death spanned several years. The State maintained these witnesses would testify to different subject matter each time they took the stand. The District Court overruled Adam's objection pursuant to M. R. Evid. 611(d).
¶11 The District Court also informed the parties pre-trial that its practice was to not allow "speeches" with objections during testimony. It explained, "The objection is, objection, hearsay; objection, relevancy. If you would like to discuss that further, you will ask for a sidebar with the Court. The sidebars are unrecorded. ... [A]t the next break, if you ***512 would like to make your record as to what your objection would be, you are clearly allowed to do so."
¶12 The second trial began on February 8, 2016. It continued for seven days, during which time the District Court, consistent with its earlier pronouncement, disallowed "speeches" with objections, making evidentiary rulings during unrecorded sidebars. The court also conferred with the parties' respective counsel at the bench, in the courtroom but outside the presence of the jury, and in chambers on numerous occasions. Some of these conferences were on the record; most were not. The record usually does not indicate whether Adam attended these conferences.
¶13 Among the witnesses testifying at trial were Heather Jenner and George Paul Holland. Jenner is a forensic scientist specializing in latent print and footwear examination who works at the State of Montana Forensic Science Division. Jenner testified as to the identification of a partial shoeprint found on a board in Matt's cabin. Holland is a detective lieutenant with the Butte-Silver Bow Police Department, who testified regarding evidence, including blood spatter evidence, *574 found in Matt's cabin and truck. Hatfield's counsel did not object to Jenner testifying as a footwear expert nor to Holland testifying as a blood spatter expert.
¶14 On February 18, 2016, the jury found Hatfield guilty of deliberate homicide. On September 20, 2016, the District Court sentenced Hatfield to the custody of Montana State Prison for life, crediting him for 944 days served. Hatfield appeals.
STANDARDS OF REVIEW
¶15 This Court generally does not address issues raised for the first time on appeal. State v. Taylor , 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79 (citation omitted). We may use the plain error doctrine in situations implicating a defendant's fundamental constitutional rights and where failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. State v. Lawrence , 2016 MT 346, ¶ 9, 386 Mont. 86, 385 P.3d 968 (citations omitted). Under this test, we first ask if the alleged error implicates a fundamental right; we next ask if failure to review the alleged error would result in one of these consequences. Taylor , ¶ 14 (citation omitted).
¶16 We exercise plenary review over constitutional questions, including alleged violations of a criminal defendant's right to be present at critical stages of the proceedings against him.
***513 State v. Blake , 2016 MT 212, ¶ 5, 384 Mont. 407, 377 P.3d 1213 (citation omitted).
¶17 We review a district court's action in allowing the prosecution to re-examine its witness following its previous direct examination for abuse of discretion. State v. Long , 2005 MT 130, ¶ 12, 327 Mont. 238, 113 P.3d 290 (citation omitted); see also State v. Carns , 136 Mont. 126, 137, 345 P.2d 735, 742 (1959) ("It is within the sound discretion of the trial court whether a witness who has been examined shall be recalled for further examination.") (citing R.C.M. 1947, sec. 93-1901-10; State v. Mumford , 69 Mont. 424, 433, 222 P. 447, 450 (1924) ).
¶18 We consider only record-based ineffective assistance of counsel claims on direct appeal. To the extent such claims are reviewable, they present mixed questions of law and fact we review do novo. State v. Chafee , 2014 MT 226, ¶ 11, 376 Mont. 267, 332 P.3d 240 (citations omitted).
DISCUSSION
¶19 1. Did the District Court violate Adam's right of presence and thus commit reversible error?
¶20 Adam alleges he was not included in several sidebars and in-chambers discussions during his trial, and claims his right of presence was thereby violated 23 times. He argues his absence curtailed his ability to fully participate in his defense, thus rendering his trial fundamentally unfair and constituting structural error, which would entitle him to a new trial. Acknowledging his trial counsel did not object to his exclusion from these conferences, Adam urges us to apply the plain error doctrine.
¶21 The State disagrees with Adam's position, first arguing the record does not prove Adam was excluded from 23 conferences. The State next argues that, even if this Court determines Adam's right of presence was violated, the violation does not amount to structural error. The State further argues Adam has not met his burden to prove that failing to grant plain error review may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the proceedings, or may compromise the integrity of the judicial process. Taylor , ¶ 12.
¶22 First, we consider whether Adam has demonstrated he was absent from the conferences he cites. We have reviewed the transcripts and found the record is silent as to Adam's presence or absence in most instances. However, in eight instances, the transcript specifically ***514 indicates the Judge and attorneys attended the conference.[1] We believe, *575 had Adam also attended, the transcript would have noted his presence. Thus, we are satisfied the record supports Adam's contention he was not present in these eight instances.
¶23 Next, we consider whether Adam's absence from these conferences constitutes structural error. Adam argues his exclusion from various conferences throughout his trial made his trial fundamentally unfair, and meaningful appellate review of his case is impossible due to the lack of a record; thus structural error exists. The State argues any error was not structural and thus does not warrant automatic reversal.
¶24 Structural defects are constitutional violations which so infect and contaminate the framework of a trial as to render it fundamentally unfair, requiring automatic reversal. State v. Charlie , 2010 MT 195, ¶ 40, 357 Mont. 355, 239 P.3d 934 (citation omitted). In previous cases regarding a defendant's right of presence, we have concluded that, even when the defendant was absent from a critical stage of the proceedings, the absence did not constitute structural error. In Blake , ¶ 9, we held the defendant's absence from an in-chambers conference was not structural error, even though we considered the conference to be a critical stage of the proceedings. In Charlie , ¶ 41, we held that although the District Court violated the defendant's right of presence from a critical stage of his case, the error was not structural. In State v. Matt , 2008 MT 444, ¶ 43, 347 Mont. 530, 199 P.3d 244 (overruled in part by Charlie ), we held the defendant's right of presence had been violated at a critical stage of the proceedings when he was excluded from an in-chambers conference at the close of the State's case-in-chief, but further held this violation was not a structural error because the resultant rulings did not "contaminate[ ] the trial mechanism along the lines that a biased judge, lack of counsel, an erroneous reasonable-doubt instruction, or a jury-selection error would." Similarly here, although the conferences at issue constitute a critical stage of the proceedings, any violation of Adam's right of presence is not a structural error.
¶25 We next consider whether Adam is entitled to plain error review. Adam admits his trial counsel did not object to his absence from these conferences, and thus he urges this Court to apply the plain error doctrine. See State v. Akers , 2017 MT 311, ¶ 20, 389 Mont. 531, 408 P.3d 142 ("[I]f a defendant fails to properly preserve his or her issue for ***515 appeal, we apply the plain error standard of review and the defendant has the burden of proof.").
¶26 The State responds that this Court should not review Adam's claims under the plain error doctrine because he has not demonstrated he suffered any prejudice because of his exclusion from conferences during his trial.
¶27 In State v. Reim , 2014 MT 108, ¶ 39, 374 Mont. 487, 323 P.3d 880, we noted, "[W]e have exercised something akin to plain error review of unpreserved right to presence violations." There, we held right of presence claims are not excepted from the general rule that a constitutional violation must first be presented to the trial court. In the absence of a timely objection in the trial court, the defendant must obtain review of a right of presence claim under one of the established methods, such as the plain error doctrine. Reim , ¶ 40. Thus, we must consider whether to apply the plain error doctrine here.
¶28 Generally, an objection concerning constitutional matters must be raised before the trial court, and if the objection is not made, we will not review it on appeal. This Court's common-law power of plain error review is an exception to that rule. Reim , ¶ 38 (citations omitted). To obtain review under the plain error doctrine, the defendant must: (1) show the claimed error implicates a fundamental right; and (2) firmly convince this Court that failure to review the error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. Reim , ¶ 38 (citation omitted).
¶29 Adam has met the first factor since his right of presence is a fundamental right. The confrontation clause of the Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments of the United *576 States Constitution provide a criminal defendant the right to be present during criminal proceedings. Article II, Section 24, of the Montana Constitution does the same.
¶30 Thus, we consider whether Adam has met the second factor and firmly convinced us that failing to review the error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. In an analysis of the threshold question of whether this Court should exercise plain error review of a right of presence claim, the defendant carries the burden to firmly convince this Court such review is warranted. Reim , ¶ 41 (citation omitted). In Reim , the State moved for an order directing the deposition of an expert witness who would be unavailable to testify at trial. The State served notice of the deposition, specifically inviting ***516 Reim and his counsel to attend. Reim's counsel attended, but Reim did not. Reim , ¶ 22. At the start of Reim's trial, the State announced its intention to place a videotape and transcript of the deposition into evidence; neither Reim nor his counsel objected. Reim , ¶ 23. On appeal, we determined Reim had not persuaded us plain error review was warranted because he had not explained how he could have meaningfully contributed to his counsel's cross-examination of the deposed witness. Reim , ¶ 41.
¶31 Here, we consider whether, as Adam maintains, his trial was fundamentally unfair because he was excluded from conferences and the conferences were unrecorded. The State argues that in five of these eight instances,[2] although the conferences were not on the record, the timing of these conferences indicates they were likely administrative matters, such as the scheduling of witnesses. We agree. These five conferences occurred at natural breaking points: in one instance at the end of opening statements, in one instance at the end of direct examination, and in the other three instances at the conclusion of a witness's testimony. While these five conferences were not recorded, an administrative determination by the District Court, such as whether there is time to take another witness's testimony during that day of trial, is not a situation in which Adam could have meaningfully contributed to his counsel's determinations as to scheduling.
¶32 The State acknowledges the three remaining instances "occurred during witnesses' testimony and may have involved evidentiary issues." However, the State points out Adam's counsel chose not to make a record about these conferences, although the District Court had emphasized that both parties had the opportunity to make a record during jury breaks. Adam argues it is precisely that lack of record which entitles him to review under the plain error doctrine.
¶33 In the first of the three conferences which may have involved evidentiary issues, the State moved to admit a video of a police interview of Adam in December 2008. Adam had no objection, but the District Court asked to see counsel for both parties in chambers. When they returned to the courtroom, counsel for the State said, "[F]or purposes of the record ... this particular exhibit ... has been modified to remove some objectionable content." Adam's counsel confirmed on the record he agreed with the modifications. The court then played the video-edited from approximately 4 hours in length to approximately 2.5 hours in length-for the jury.
***517 ¶34 In this instance, Adam, the interviewee, was present when the video was made. He was also present when the edited version was played for the jury. Thus, he knows the result of this evidentiary determination, as he knows what the jury saw and what it did not see. He does not argue on appeal that specific portions of this video were incorrectly included or excluded from the viewing. More to the point, he has not explained how he could have meaningfully contributed to the parties' determination as to which portions of the video to show or exclude.
¶35 The second of the three conferences occurred during the State's redirect examination of Dr. Walter Loren Kemp, a forensic pathologist, who testified about his examination of Matt's skull after it was submitted to Dr. Kemp's laboratory. Dr. Kemp opined the *577 damage to the skull was consistent with a baseball bat, and the State's counsel suggested he might diagram an explanation of his opinion to aid the jury's understanding. Adam's counsel interrupted the testimony and asked to approach the bench. The District Court granted permission, and counsel for both parties then proceeded to chambers with the Judge. After they returned to the courtroom, the State had no further questions for Dr. Kemp.
¶36 In this instance, although the conference was unrecorded, the context makes it clear Adam's counsel received a favorable evidentiary ruling which foreclosed the State's further exploration of Dr. Kemp's opinions regarding the cause of the damage to Matt's skull. While Adam argues he could have offered his counsel, who had not attended Adam's first trial, "insights into evidentiary rulings," he acknowledges he had no personal knowledge of the expert witnesses; moreover, any insight Adam could have offered into Dr. Kemp would not have changed the result, as Adam's counsel apparently obtained a favorable evidentiary ruling.
¶37 The third conference occurred during the direct examination of Harley Erickson, a friend of Adam's. Adam's counsel asked Erickson what had occurred during a walk he took with Adam, and Erickson stated, "Adam had told me ...." The State objected for hearsay and the District Court sustained the objection. Adam's counsel asked to approach, and the court and counsel for both parties went into chambers with the Judge. Upon return, Adam's counsel resumed questioning, asking Erickson to testify "without telling us what Adam told you that day."
¶38 Again, although the conference was unrecorded, the context leaves little doubt this was simply a ruling on hearsay testimony. Although Adam argues that in the case of lay witnesses, he could have ***518 meaningfully contributed because he personally knew the witnesses, without something more specific, we do not see how he could have meaningfully contributed to the argument of an evidentiary ruling on hearsay.
¶39 Although Adam's right of presence was violated during critical stages of the proceeding, thus implicating Adam's fundamental rights, we conclude Adam has not established plain error in his exclusion from conferences. Adam has not firmly convinced us that any error resulted in a manifest miscarriage of justice, left unsettled the question of fundamental fairness of the trial, or compromised the integrity of the judicial process.
¶40 2. Did the District Court err by failing to make a record of critical stages of Adams' trial?
¶41 Adam next argues the District Court violated his substantive due process rights by failing to make a record of the various conferences which occurred during his trial and thereby limited his access to appellate review. Adam asserts the District Court pre-empted this Court's review of its rulings for abuse of discretion by choosing not to make those rulings on the record.
¶42 The State contends none of the case law Adam relies upon is applicable or persuasive. Instead, the State points to State v. Prawitt , 262 P.3d 1203 (Utah Ct. App. 2011), in which the Utah Court of Appeals held a court did not violate a defendant's due process rights when it failed to record conferences because the defendant carries the burden of ensuring the court's record adequately preserves his arguments for appeal.
¶43 Adam argues that failure to preserve the record is the error itself, and this Court has held a criminal defendant cannot be required to prove the unprovable-that he was prejudiced by an unrecorded conference when the error is that the conference was unrecorded. State v. Tapson , 2001 MT 292, ¶ 35, 307 Mont. 428, 41 P.3d 305 ("We decline to hoist a criminal defendant on the horns of this sort of dilemma ... i.e. requiring him to prove error prejudicially affecting his jurisdictional or constitutional rights where the only means to meet that burden-the court record-was not preserved by reason of the commission of the error itself."). In Tapson , we held it was reversible error for a judge to enter the jury room during deliberations, without the defendant's express, personal waiver, where the lack of a record made it *578 impossible to determine whether any prejudice to the defendant occurred. Tapson , ¶ 33.
¶44 However, Tapson did not broadly hold that any unrecorded violation of the defendant's right of presence was reversible error per ***519 se. We clarified that the ruling applied only to Tapson's specific circumstances:
[C]ontrary to the dissent's suggestion that the rule we set forth in this case would "potentially impose itself on each sidebar conference," our opinion here deals with a discrete error-i.e., the Judge entering the jury room while the jury is present, without the presence of the defendant, counsel and the court reporter, and without a contemporaneous, personal, knowing, voluntary and intelligent, on-the-record waiver by the defendant of his rights to be present at a critical stage of the trial and to a public trial. If this rule is to be expanded to cover other errors and other rights, as the dissent fears, then it will be on a case-by-case basis and only after briefing and argument.
Tapson , ¶ 39. We decline to expand Tapson in the present case, where prior to trial the District Court advised the parties conferences would be unrecorded and placed the burden on the parties to make their records, and where the existing record supports the State's position that Adam suffered no prejudice.
¶45 Adam further argues the District Court bears the responsibility of ensuring its proceedings are on the record. He relies on the dissenting opinion of Counts v. Chapman , 180 Mont. 102, 110, 589 P.2d 151, 155 (1979) (Shea, J., dissenting) ("It is the duty of the District Court judges to see to it that the court reporters in their employ are present to record the judicial proceedings which the particular judge is handling."). However, the Counts majority held a party which waives the right to a verbatim record "cannot complain about lack of record in this Court." Counts , 180 Mont. at 108, 589 P.2d at 154. Here, the District Court informed counsel sidebars were unrecorded and it was incumbent upon the parties to make their record during breaks in testimony. Adam's counsel did not object to the District Court's practice. Furthermore, on a few occasions, he utilized breaks in testimony to make a record of things which had taken place during unrecorded conferences. Thus, he waived his right to a verbatim record and now, under Counts , cannot complain about lack of record in this Court.
¶46 In Prawitt , the Idaho Court of Appeals held that its district courts share in the responsibility to ensure that an adequate record is made because, like our district courts, they are designated by statute as a court of record. Prawitt , 262 P.3d at 1205. However, the Prawitt court further noted, consistent with our reasoning in Counts , "One who fails to make a necessary objection or who fails to ensure that it is on the ***520 record is deemed to have waived the issue." Prawitt , 262 P.3d at 1205-06. Thus, the court held the defendant, who made evidentiary objections during unrecorded conferences, was on notice objections were unrecorded and carried the burden of ensuring his objections were adequately preserved for appeal. Prawitt , 262 P.3d at 1206.
¶47 Since the burden was on Adam to ensure the preservation of an adequate record for appeal, we hold the District Court did not err in this instance.
¶48 3. Did the District Court err by failing to ensure the proceedings in this matter were public?
¶49 Adam argues that the District Court holding conferences with counsel outside the courtroom and at sidebar also violated his right to a public trial. He bases this argument not only on his constitutional right to a public trial under Article II, Section 24, of the Montana Constitution, but also on the public's right to know under Article II, Sections 9 and 16, of the Montana Constitution.
¶50 The State responds that this Court should deny plain error review because Adam has not demonstrated that a failure to review the claim would result in a manifest miscarriage of justice.
Adam's right to a public trial
¶51 In addition to a criminal defendant's fundamental right to be present at all critical stages of trial, he has the fundamental *579 right to a public trial. Mont. Const. art. II, § 24 ; Tapson , ¶ 21. A public trial ensures the defendant has the means for proving procedural facts necessary to protect his rights and to see that the defendant is not unjustly condemned. Tapson , ¶ 21 (citation omitted). The right to a public trial extends to the entire trial. Tapson , ¶ 22 (citation omitted).
¶52 Generally, we will not address issues raised for the first time on appeal. Taylor , ¶ 12. However, although Adam did not preserve this issue by objecting below, we may exercise plain error review. Akers , ¶ 13. As previously noted, we invoke the plain error doctrine sparingly, at our discretion, and on a case-by-case basis. Reim , ¶ 29 (citations omitted). When a criminal defendant's fundamental rights are invoked, we may review the claim under the plain error doctrine where failing to do so may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the proceedings, or may compromise the integrity of the judicial process. Akers , ¶ 13 (citation omitted).
¶53 A criminal defendant must consent to waiving constitutionally-guaranteed fundamental rights, and there is a reasonable presumption against such a waiver. For a waiver to be effective, a defendant must ***521 waive a known right knowingly, intelligently, and voluntarily. Reim , ¶ 31 (citations omitted).
¶54 Adam did not waive his right to a public trial. However, as discussed under Issue One above, he has not met his burden of firmly convincing this Court that it should exercise plain error review in light of the nature and circumstances of the side bar and chambers meetings with counsel. See Reim , ¶ 41. We therefore decline to further address this claim.
The public's right to know
¶55 Adam also argues the District Court's failure to make evidentiary rulings in open court and to record its conferences violates the public's right to know under Article II, Sections 9 and 16, of the Montana Constitution. Adam acknowledges it is not always appropriate for the jury to be privy to every aspect of a trial, but he maintains all aspects should remain open to the public. He admits it would be impractical for a district court to include the public in sidebars and in-chambers discussions. However, he argues a court can remain in the courtroom and remove the jury instead, allowing the proceedings to remain open to the public. He further argues the public's right to know would have been preserved had the District Court recorded its conferences, because the public could order a transcript of those conferences. Adam argues the District Court created a fundamentally unfair and unconstitutional proceeding by excluding the public and failing to record the conferences.
¶56 The State responds that sidebars and in-chambers conferences are not places historically open to the public, and furthermore, in this case, these conferences largely addressed administrative matters. The State further maintains the public's right to know cannot serve as a basis to reverse a criminal conviction, and thus we should not consider Adam's arguments on this issue.
¶57 The right to an open public trial is a shared right of the accused and the public. State v. Northcutt , 2015 MT 267, ¶ 7, 381 Mont. 81, 358 P.3d 179 (citation omitted). A public trial ensures the defendant has the means for proving procedural facts necessary to protect his or her rights and to see the defendant is not unjustly condemned. Tapson , ¶ 21 (citation omitted). "The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." Press-Enterprise Co. v. Superior Ct. of Cal. , 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984) (emphasis in original).
***522 ¶58 In Press-Enterprise Co. , 464 U.S. at 510, 104 S.Ct. at 824, the United States Supreme Court explained, "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The *580 interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."
¶59 Whether or not the District Court's decision to make evidentiary rulings without a record would survive a First Amendment analysis, Adam has not rebutted the State's position that a violation of the public's right to know cannot serve as a basis for overturning a criminal conviction. He has offered no law or argument that this remedy is available in this instance. Thus, we do not consider this issue.
¶60 4. Did the District Court abuse its discretion by allowing witnesses to testify multiple times on direct examination?
¶61 Adam argues that the District Court erred when it allowed the State to call two law enforcement officers multiple times on direct examination, over his counsel's objections.
¶62 During a pre-trial status hearing, Adam's counsel objected to the State's intention to call and later recall two law enforcement witnesses. He argued that allowing the witnesses to testify on multiple occasions would be prejudicial as well as inefficient and could frustrate effective cross-examination. He argued the format would give those witnesses "an aura of undue credibility as they filled a role like that of a narrator for the jury."
¶63 The State maintained this format would allow the jury to more easily understand the multi-year investigation. The State argued these two officers filled varying roles in the investigation over the course of six years, and it wanted the witnesses to testify chronologically. The State reasoned chronological order would allow a more cohesive narrative than having each witness testify about things that occurred across the span of the investigation. The District Court concluded such format was permissible under M. R. Evid. 611(d). The District Court reasoned that since the investigation spanned several years, the "ascertainment of the truth" was best served by allowing the State to call and later recall certain witnesses at different times during the presentation of its case-in-chief.
¶64 Adam acknowledges Rule 611(d) allows a witness to be recalled in the court's discretion, but he asserts it does not contemplate the trial strategy the State proposed here. He notes this Court has rarely considered the scope of a district court's discretion in allowing the ***523 recall of witnesses, but argues in this instance, the District Court abused its discretion because the law enforcement officers "were allowed to 'clean up' anything they missed during the first round of questioning."
¶65 The State maintains the District Court acted within its discretion. It notes that although Adam alleges the court allowed the officers to "clean up" their earlier testimony, he does not cite any specific testimony nor explain why it was improper.
¶66 M. R. Evid. 611(d) provides in relevant part:
A witness may be re-examined as to the same matters to which the witness testified only in the discretion of the court, but without exception the witness may be re-examined as to any new matter brought out during cross-examination. After the examination of the witness has been concluded by all the parties to the action, that witness may be recalled only in the discretion of the court.
¶67 Rule 611(d) has no counterpart in the Federal Rules, but its substance has a long history in Montana law. Its language, which was first enacted in § 3378, Montana Civil Code of 1895, was taken from § 93-1901-10, R.C.M. (1947) ("A witness once examined cannot be re-examined as to the same matter without leave of the court .... And after the examinations on both sides are once concluded, the witness cannot be recalled without leave of the court. Leave is granted or withheld, in the exercise of a sound discretion.").
¶68 In Mumford , 69 Mont. at 434, 222 P. at 450, this Court held that the district court did not abuse its discretion in denying the defendant's request to recall a witness for recross-examination where this Court determined the testimony would have been irrelevant to the issues in the case. However, in *581 Carns , 136 Mont. at 137-38, 345 P.2d at 742, this Court held that a district court abused its discretion when it refused to allow the defense to recall an alleged assault victim after a later witness contradicted part of the victim's testimony where the only evidence connecting the defendant to the case was the victim's identification of him as the assailant, and the defense consisted primarily of attacking the victim's identification. In Clark v. Wenger , 147 Mont. 521, 415 P.2d 723 (1966), this Court also held that a district court abused its discretion when it refused to allow the plaintiff's recall after a juror informed the court that he had witnessed the plaintiff outside of court and her actions had influenced his opinion on the merits of her case.
¶69 Since the facts of those cases are distinct from the present case, they are of limited use in determining whether the District Court ***524 abused its discretion here. Recognizing this, the State offers U.S. v. Puckett , 147 F.3d 765 (8th Cir. 1998), which is factually on point. In Puckett , the defendant argued the lower court erred by allowing the government to recall law enforcement officers so it could present evidence in chronological order. The U.S. Court of Appeals for the Eighth Circuit upheld the lower court, holding:
The witnesses testified about different subject matter each time they were called to the stand, the defendants were free to cross examine them about any of their testimony, and there is no indication that the government recalled the witnesses to bolster their credibility. While it may be preferable to have witnesses testify in a less interrupted manner, we cannot say the district court abused its discretion.
Puckett , 147 F.3d at 770 (citation omitted).
¶70 In Adam's case, the State also sought to recall law enforcement officers so it could present its case in chronological order. Here, the law enforcement officers also testified about different subject matter each time they were called to the stand, Adam was free to cross-examine them about any of their testimony, and we see no indication the State recalled its witnesses to bolster their credibility. While we agree it is preferable to have witnesses testify in a less interrupted manner, we find the Eighth Circuit's reasoning persuasive and consistent with our earlier interpretations of Montana law. Accordingly, we hold the District Court did not abuse its discretion when it allowed two of the State's law enforcement witnesses to testify multiple times on direct examination.
¶71 5. Did Adam's trial counsel commit record-based ineffective assistance of counsel?
¶72 Adam also argues his trial counsel was ineffective for failing to: ensure his right of presence at conferences; preserve conferences on the record; object to the testimony of the State's footprint expert; and object to the testimony of the State's blood spatter expert.
¶73 The State responds that the errors Adam alleges are not record-based, and therefore not reviewable on direct appeal.
¶74 The right to effective assistance of counsel is a fundamental right guaranteed by both the United States and Montana Constitutions. Golie v. State , 2017 MT 191, ¶ 7, 388 Mont. 252, 399 P.3d 892 (citing U.S. Const. amends. VI, XIV ; Mont. Const. art. II, § 24 ). We review ineffective assistance of trial counsel claims by applying the two-part test from Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
***525 Sanchez v. State , 2012 MT 191, ¶ 20, 366 Mont. 132, 285 P.3d 540. "Under this test, the defendant must demonstrate (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant." Sanchez , ¶ 20 (quoting St. Germain v. State , 2012 MT 86, ¶ 8, 364 Mont. 494, 276 P.3d 886 ).
¶75 Ineffective assistance claims are fact-dependent considerations that usually can only be reviewed by referring to a developed record. State v. Greene , 2015 MT 1, ¶ 17, 378 Mont. 1, 340 P.3d 551. As a threshold matter, this Court must determine whether a direct appeal or a postconviction relief hearing is the more appropriate forum for the claim. If the record does not disclose the reason for counsel's allegedly deficient act or omission, the defendant must raise the claim in a petition for postconviction relief.
*582 State v. Kougl , 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095.
¶76 Here, Adam raised four ways in which he alleges his counsel was ineffective; however, the record is silent as to why Adam's counsel did not object to Adam's absence from certain conferences, Jenner's footwear testimony, and Holland's blood spatter testimony, nor does the record disclose why Adam's counsel chose not to make a record about evidentiary rulings which were unrecorded. Furthermore, we cannot evaluate the effectiveness of Adam's counsel at these numerous off-the-record conferences, regardless of whether Adam was in attendance. As such, Adam's ineffective assistance claims are not record-based and thus are more appropriately raised in a petition for postconviction relief. Although Adam's claims of ineffectiveness are not reviewable on direct appeal, given the lack of record and the substantiality of those claims, we believe these claims deserve further consideration because of their troubling nature. Should Adam desire to pursue timely postconviction relief, upon his application for appointment of counsel, the Office of the Public Defender, or Office of Appellate Defender, if applicable, shall provide such counsel if Adam otherwise qualifies. Section 46-21-201, MCA.
¶77 6. Does cumulative error in this matter warrant a new trial?
¶78 Finally, Adam argues he is entitled to a new trial under the cumulative error doctrine. Adam alleges eleven cumulative errors occurred at trial which, taken together, resulted in a trial lacking in fundamental fairness:
(1) the Court's failure to include Adam at critical stages, (2) failure to record all of the proceedings, (3) failure to have an open and public trial in violation of Adam's rights, (4) failure to have an open and public trial in violation of the public's rights, (5) failure to protect the public's right to know, (6) allowing the state to narrative [sic] its case using law enforcement; (7) Counsel's ***526 ineffective assistance by his failure to include Adam at sidebar, (8) failure to preserve the record, (9) failure to object to foundation or voir dire Jenner or failure to preserve the objection, (10) failure to object to foundation or voir dire [Holland], [and] (11) bolstered [Holland's] credibility.
¶79 The State argues that the cumulative error doctrine does not apply to Adam's case because Adam has demonstrated no errors.
¶80 The cumulative error doctrine refers to a number of errors which, taken together, prejudice a defendant's right to a fair trial. Under this doctrine, once such accumulated errors are identified as having prejudiced a defendant's right to a fair trial, reversal is required. However, the defendant must prove the existence of prejudice; mere allegations of error without proof of prejudice are inadequate. State v. Flowers , 2004 MT 37, ¶ 46, 320 Mont. 49, 86 P.3d 3 (citations omitted) (internal quotation marks omitted) (overruled in part on other grounds by Faulconbridge v. State , 2006 MT 198, ¶ 53, 333 Mont. 186, 142 P.3d 777 ). Defendants are entitled to a fair trial, not to a trial free from errors. State v. Cunningham , 2018 MT 56, ¶ 32, 390 Mont. 408, 414 P.3d 289 (citation omitted).
¶81 As set forth in the previous issues, Adam's trial was not free of error; however, Adam has not proven that he was prejudiced by these errors, nor that his trial was unfair. Therefore, we decline to order a new trial on the basis of cumulative error.
CONCLUSION
¶82 We hold Adam's right of presence was violated but he did not meet his burden of proving he is entitled to plain error review; the District Court did not err by failing to make a record of critical stages of the trial; the District Court did not err by failing to ensure these proceedings were public; the District Court did not abuse its discretion by allowing the State to recall certain witnesses on direct examination; Adam's trial counsel did not commit record-based ineffective assistance; and Adam is not entitled to a new trial because of cumulative error.
¶83 Affirmed.
We Concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JIM RICE, J.

See 2/8/16 Tr. at 203; 2/9/16 Tr. at 429, 462-63; 2/10/16 Tr. at 483; 2/11/16 Tr. at 818; 2/12/16 Tr. at 885; 2/17/16 Tr. at 1305-06, 1315.

2/8/16 Tr. at 203; 2/9/16 Tr. at 429, 462-63; 2/11/16 Tr. at 818; 2/17/16 Tr. at 1315.