FILED

05/05/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0571

DA 17-0571

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 110N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KENNETH WAYNE JONES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-0693
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Mary Leffers Barry, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  February 5, 2020

Decided:  May 5, 2020

Filed:

_____
                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited, and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant Kenneth Wayne Jones appeals from the July 31, 2017 Judgment of the Thirteenth Judicial District Court, Yellowstone County, following his convictions of incest and witness tampering. Jones argues that he received ineffective assistance of counsel (IAC) when his counsel disclosed to the State that he intended to argue the victim's conduct did not comport with what would be expected of a victim of incest. We affirm.

¶3 On July 11, 2016, Jones was charged with one count of incest, a felony, in violation of § 45-5-507, MCA, and one count of tampering with a witness, a felony, in violation of § 45-7-206, MCA. The charges were based on allegations that Jones repeatedly engaged in sexual intercourse with his daughter, E.J., from the time she was fourteen-years-old until she was sixteen-years-old, and that he threatened to harm E.J. if she disclosed the abuse.

¶4 On February 2, 2017, eleven days before trial was set to begin, the State gave notice of its intent to call Wendy Dutton as an expert witness to "educate the jury on counter-intuitive victim behaviors, including but not limited to recantation, cooperation with abuser and delayed disclosure." Counsel for the State acknowledged the disclosure was untimely, but explained that she had met with Defense Counsel earlier that day and was informed that Defense Counsel was likely to argue to the jury that E.J.'s conduct was uncharacteristic

2

of a victim of incest, and that he would likely cross-examine E.J. about a recantation of an earlier report of abuse.

¶5      On February 8, 2017, the District Court held a status conference and offered Jones a continuance of trial as a potential remedy for the State's late disclosure of Dutton. After a recess in which Jones consulted with Defense Counsel, Jones confirmed his wishes to proceed to trial as scheduled. The District Court also asked Defense Counsel if he believed he was "making a good strategic decision with regard to [] Dutton, as far as interviewing her and not relying or attempting to hire your own expert?" Defense Counsel responded that he was "making a proper choice," and was prepared to go to trial and cross-examine Dutton. Dutton testified on the last day of trial.

¶6      Prior to Dutton's testimony, the State called several other witnesses. Dr. Cynthia Brewer testified that E.J. had presented to the Billings Clinic emergency room in June 2016 with a severe case of Type 1 herpes, a sexually transmitted infection for which Jones had also tested positive. E.J.'s sister, J.M.J., testified that Jones would often require E.J. to share a bed with him when they lived in Roundup, Billings, and later when they moved back to Arkansas. J.M.J. testified she observed Jones having intercourse with E.J. while the three of them were staying in a motel room in Arkansas. On another occasion while J.M.J. was staying in a camper with Jones and E.J., J.M.J. testified Jones and E.J. shared a bed and J.M.J. awoke to the camper rocking back and forth. J.M.J. described that she would sometimes hear "moaning" noises coming from Jones and the bed he was sharing with E.J. and that she could hear E.J. say, "Stop." J.M.J. also recalled hearing her

3

father ask E.J., "Why are you tightening up?" E.J.'s mother, Laura, also testified that she observed E.J. sharing a bed with Jones. The State introduced letters that Jones had mailed to E.J. and the rest of the family in which he states he is disappointed in himself for his actions and apologizes for making "somebody that means more . . . than anything" to him "[a]fraid . . . or hate" him.

¶7 Jones argues on appeal that he received IAC when Defense Counsel revealed his "confidential defense trial strategy" to the State in the days leading up to trial, causing the State to secure an expert witness on child sexual abuse which prejudiced Jones at trial.

¶8 IAC claims are mixed questions of law and fact which we review de novo. *Cheetham v. State*, 2019 MT 290, ¶ 7, 398 Mont. 131, 454 P.3d 673 (citing *State v. Hatfield*, 2018 MT 229, ¶ 18, 392 Mont. 509, 426 P.3d 569).

¶9 A criminal defendant has the federal and state constitutional right to the effective assistance of counsel. *Cheetham*, ¶ 9 (citing U.S. Const. amend. VI, XIV; Mont. Const. art. II, § 24). A defendant claiming IAC must show: (1) "that counsel's performance was deficient—making errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment," and (2) "that the deficient performance prejudiced the defendant, in other words, that the errors 'were so serious as to deprive the defendant of a fair trial . . . .'" *State v. Schowengerdt*, 2018 MT 7, ¶ 31, 390 Mont. 123, 409 P.3d 38 (quoting *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861). A defendant must satisfy both prongs of this test in order to prevail on an IAC claim. *Whitlow*, ¶ 11 (citing *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601).

¶10 Even if we assume, for the sake of argument, that Jones's trial counsel's performance was deficient, in light of the other overwhelming evidence presented against Jones, we do not find a reasonable probability of a different outcome. *See Heavygun v. State*, 2016 MT 66, ¶ 11, 383 Mont. 28, 368 P.3d 707 (quotations and original alterations omitted) ("Under the second prong of the [IAC] test, the prejudice prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). The jury heard testimony that E.J. had contracted the same sexually transmitted infection as Jones and that she frequently shared a bed with Jones. J.M.J. testified that she saw and heard Jones having intercourse with E.J. on at least two occasions. The jury also saw the letters Jones wrote to E.J. and the rest of the family in which he admits he is disappointed in himself and apologizes for his conduct.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The judgment of conviction is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ BETH BAKER

5